Andrew AKINS *v.* STATE of Arkansas

CR 96–352                                   955 S.W.2d 483

Supreme Court of Arkansas
Opinion delivered October 16, 1997

*Tarver & Byrne*, by: *Russell J. Byrne*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Brad Newman*, Asst. Att'y Gen., for appellee.

DAVID NEWBERN, Justice. Andrew Akins was convicted of rape, Ark. Code Ann. § 5-14-103 (Repl. 1993), and aggravated robbery, Ark. Code Ann. § 5-12-103 (Repl. 1993), and given sixty- and forty-year consecutive imprisonment sentences respectively. Mr. Akins argues the evidence was insufficient to support the conviction. We disagree with his argument on that point. We decline to review his argument that he was denied his right to a speedy trial because we have no indication that the Trial Court ruled on such a motion. The State concedes that reversal and remand is required because Mr. Akins was denied his constitutional right to represent himself. In addition, we address Mr. Akins's argument that the Trial Court abused his discretion in admitting evidence that Mr. Akins had committed an earlier crime. As the case is to be remanded, and thus a new record of trial compiled, we need not address the argument that the record

in this case was insufficient to permit Mr. Akins to mount a proper appeal.

George and Ralita Franklin, residents of Lake Village, went with Tommy and Ledell Bolton to Dave's Food Mart where the Franklins cashed a tax-refund check. When Mr. Franklin left home later that evening, he saw Mr. Bolden talking with Andrew Akins, who lived on the same street as the Franklins. Mr. Bolden was aware that Mr. Franklin would be working in Wynne that evening. When Mr. Franklin left to go to work, he took most of the cash from the check with him.

Still later that evening, Ms. Franklin and a child were watching television in the Franklins' bedroom. When someone knocked on the front door, the child opened the door because she thought that it was her brother. After seeing who was at the door, the child began crying and ran into the bedroom. Thereafter, a man, dressed in black and wearing a mask, entered the bedroom. The only lighting in the bedroom came from the television. The man pointed his shotgun at Ms. Franklin and demanded the money he had seen at Dave's Food Mart. Ms. Franklin told him that she did not have that money, and she gave him twenty-eight dollars. He insisted that she had more money and lifted the gun up as if he were going to hit her with it.

The man then pointed his gun at Ms. Franklin and told her to go into the front room. He then demanded that she disrobe. The room was dark. When he raised his gun up as if he were going to hit her with it, she complied. While he was standing behind Ms. Franklin, he made her turn around and hug him. Then, he made her bend over a living room chair, and he placed his penis in her vagina. After he ejaculated, he told her to go to the bathroom to urinate. The light was not on in the bathroom. After she urinated, he told her to wipe herself with a tissue. She did so, and she put the tissue in a bucket in the bathroom. The man grabbed her hand and told her that if she went to the police, he would kill her and the child.

He then told her to turn off the kitchen lights so that he could, without being seen, exit the house through the back door. She testified that they were in the kitchen for about twenty-five

minutes. While the lights were on in the kitchen, Ms. Franklin focused on his eyes. Once the kitchen lights were turned off, the man left the house. During the course of the incident, the man called Ms. Franklin "bitch" several times.

After the man left, Ms. Franklin ran to the house next door, and she was brought to the police department and to a hospital emergency room where a standard rape-kit examination was performed. She told the police that the man who entered her home could have been Jarvis Akins because the eyes that she saw looked like Jarvis Akins's eyes. Andrew Akins and Jarvis Akins are brothers. She was informed that Jarvis Akins was in jail. She told Mr. Franklin that she did not know who the perpetrator was but that he had "funny looking eyes." The next day, she viewed photographs at the request of the police. She covered the faces of the individuals, except for the eyes, in the three pictures, and she identified Andrew Akins.

At the trial, Stephanie Watts testified that Andrew Akins raped her on November 21, 1990. Ms. Watts testified that during the course of the incident, Mr. Akins called her "all sorts of bitches," made her hug him, and told her that if she told the police about the incident, he would harm her. Ms. Watts further testified that Mr. Akins did not wear a mask during the incident, and that he ripped her clothes off and raped her while she was lying down. Ms. Watts stated that Mr. Akins also hit her, choked her, and poked her in the eyes.

There was testimony that Mr. Akins escaped from custody on two occasions. There was also testimony that Mr. Akins has many relatives in the area, and some have light, hazel eyes as does Mr. Akins.

A small paper bag containing paper towels and the rape kit, which included underwear worn by Ms. Franklin on the night she was raped, was submitted to the Arkansas Crime Laboratory to be tested for the presence of semen and blood. Semen was identified on the various swabs from the rape kit, the underwear, and the paper towels.

John Quill, an FBI supervisory special agent, testified that he analyzed DNA samples from vaginal swabs and the underwear of Ms. Franklin as well as blood samples taken directly from Mr. Akins, and he concluded that the DNA profiles matched Mr. Akins's DNA. He also analyzed DNA samples from the vaginal swabs of Stephanie Watts and concluded that the DNA profiles matched Mr. Akins's DNA. Mr. Quill testified that the chance of an unrelated individual having a DNA profile like Mr. Akins is less than one in seven hundred million in the Caucasian, black, and Hispanic population. He also testified that "unrelated" means those individuals other than a father, a brother, or a cousin so that if there is another accused from the family, the probability numbers would be different. He stated that he can distinguish the DNA profiles of brothers if he has a known standard for comparison. No such standard was offered as evidence at the trial.

### 1. Sufficiency of the evidence

■ The first issue on appeal is whether the Trial Court erred in denying Mr. Akins's motion for directed verdict. "A motion for directed verdict is a challenge to the sufficiency of the evidence." *Carter v. State*, 324 Ark. 395, 921 S.W.2d 924, (1996). In considering whether a conviction is supported by sufficient evidence, the Court need only consider the evidence that supports the guilty verdict, and the Court views the evidence in the light most favorable to the State and affirms if there is substantial evidence to support the verdict. *Martin v. State*, 328 Ark. 420, 944 S.W.2d 512, (1997); *Hicks v. State*, 327 Ark. 652, 941 S.W.2d 387 (1997). "Substantial evidence is that which is forceful enough to compel reasonable minds to reach a conclusion one way or the other" and permits the trier of fact to "reach a conclusion without having to resort to speculation or conjecture." *McGehee v. State*, 328 Ark. 404, 943 S.W.2d 585 (1997).

The original record, portions of which were lost, does not include a motion for directed verdict by counsel for Mr. Akins at the close of the State's case. The Trial Court held a reconstruction hearing pursuant to an order from this Court to complete the record, and concluded that defense counsel made the motion for directed verdict as required by Ark. R. Crim. P. 33.1. The

ground stated was lack of substantial evidence identifying Mr. Akins as the perpetrator of the offense against Ms. Franklin.

■ There was substantial evidence to support the jury's verdict. Ms. Franklin identified Mr. Akins from a photographic line-up, and most important, his DNA profile matched that contained in the rape kit. The jury also could have taken into consideration the opportunity Mr. Akins had to learn of the cash that he thought was in Ms. Franklin's possession, especially in view of the fact that the perpetrator mentioned, in the course of committing the offenses, having seen the money at Dave's Food Mart.

## 2. Speedy trial

■ The second issue is whether the Trial Court erred in not dismissing this matter based on a violation of Ark. R. Crim. P. 28. The record does not include a motion to dismiss based on the denial of a speedy trial. The record-reconstruction effort leaves some doubt as to whether such a motion was made. It is clear, however, that neither the original record nor the record of the reconstruction hearing shows that any ruling on such a motion occurred. To preserve arguments for appeal, even constitutional ones, the appellant must obtain a ruling. *Newman v. State*, 327 Ark. 339, 939 S.W.2d 811 (1997); *Danzie v. State*, 326 Ark. 34, 930 S.W.2d 310 (1996).

■ At the reconstruction hearing, the attorneys and the Trial Court spoke of various motions and trial events, including testimony, that were not transcribed. Defense counsel had the opportunity to review the record and note that no ruling on such a motion was included. However, no reference to a ruling was made in the reconstruction proceeding. We decline to dismiss this case in view of the lack of evidence that the Trial Court ruled on a speedy trial motion.

## 3. Prior criminal conduct

Stephanie Watts testified that she was raped by Mr. Akins some three months prior to the rape of Ms. Franklin. The Trial Court gave a limiting instruction that "such evidence of another similar event committed under similar circumstances is admitted

solely for the purpose of establishing identity of the Defendant." *See* Ark. R. Evid. 404(b).

The record does not indicate that there was an objection to Ms. Watts's testimony, so we do not reverse on the point in this instance. As a retrial is likely, however, we will address the issue to point out that, had a proper objection been made, the evidence should have been excluded.

■ Ordinarily, the Trial Court has wide discretion in admitting evidence of other crimes or wrongs, and its decision will not be reversed absent an abuse of discretion. *Haynes v. State,* 309 Ark. 583, 832 S.W.2d 479 (1992). We have, however, zealously guarded the rights of accused persons to have the State's evidence strictly confined to the issues surrounding the offense charged to insure that no one is convicted because he has committed offenses other than that for which he is on trial or because he is of bad character and addicted to crime. *Tarkington v. State,* 250 Ark. 972, 469 S.W.2d 93 (1971). Yet the mere fact that evidence shows the defendant guilty of another crime does not prevent its admissibility when otherwise competent on the issue on trial. *Id.*

The similarities of the two rapes were not sufficient to support a finding that Ms. Watts's testimony was admissible pursuant to Ark. R. Evid. 404(b) which provides that evidence of other crimes, wrongs, or acts may be admissible to establish proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *See Rogers v. State,* 257 Ark. 144, 515 S.W.2d 79 (1974) (stating evidence of a defendant's commission of a similar offense is admissible as tending to show identity of the perpetrator when the similarity of the means or manner employed in committing the crimes logically operates to set the offenses apart from other crimes of the same general variety and tends to suggest that the perpetrator of one was the perpetrator of the other).

The rapes occurred months apart. Ms. Franklin's assailant wore a mask, Ms. Watts's assailant did not. Ms. Franklin's assailant made her take off her own clothes while Ms. Watts's assailant ripped her clothes off of her. Ms. Franklin's assailant raped her from behind while she bent over a chair while Ms. Watts's assailant

raped her while she was lying down. Ms. Franklin's assailant did not strike her while Ms. Watts's assailant hit her, choked her, and poked her in the eyes.

The only similarities between the two rapes were that both Ms. Franklin and Ms. Watts reported that the assailant called them a "bitch" and made them hug him. Whatever probative value the rape of Ms. Watts had was substantially outweighed by the danger of prejudice. Ark. R. Evid. 403.

The State argues that evidence of Ms. Watts's rape was necessary in order for expert testimony on the DNA analysis to be presented because the DNA expert had to testify as to how he obtained the DNA samples of Mr. Akins. There was no such necessity. The expert had DNA samples from Mr. Akins and from Ms. Franklin. The ones from Ms. Watts were superfluous.

## 5. Self-representation

The remaining issue is whether the Trial Court erred in denying Mr. Akins's right to represent himself. The State concedes reversible error on this point. At the August 18, 1995 pretrial hearing, Mr. Akins requested that he be allowed to represent himself and stated that he would not be ready for trial on the August 22 trial date. Apparently, communications between Mr. Akins and defense counsel had broken down. Defense counsel stated that he was only able to get "limited responses" from Mr. Akins, and Mr. Akins stated that defense counsel would not listen to him. The Trial Court explained that Mr. Akins "need[ed] somebody with experience in the law," and that he was not convinced that Mr. Akins had demonstrated sufficient intelligence to represent himself. The Trial Court also stated that if Mr. Akins had asked "three years ago" to represent himself, he might have been allowed to do so, but there would be no continuance to allow the defendant to become familiar with the case. Defense counsel argued that Mr. Akins was familiar with the case, and that Mr. Akins had filed a motion to sever, which was similar to the motion defense counsel later filed, as well as a writ of mandamus to effect his release pursuant to Rule 28.3.

At the close of the hearing, the Trial Court stated that, if Mr. Akins reviewed his file during the four days prior to trial, the Trial Court would reconsider. There was some confusion as to whether the Trial Court would allow Mr. Akins to represent himself if he read the file and was prepared for the August 22 trial date.

On the morning of the trial, Mr. Akins stated that he still wanted to represent himself and that he had asked to do so on previous occasions but that he was not prepared to go to trial that day. As to Mr. Akins's argument that he attempted to speak with the Trial Court about representing himself prior to August 18, the Trial Court could not recall the incident and stated that he would have to agree with Mr. Akins. Mr. Akins also referred to letters that he had written to the Trial Court in which he had requested that he be allowed to represent himself. Mr. Akins's request to represent himself on August 18, 1995, was the first such request in the record. Mr. Akins stated that he had not read the file because he thought that the Trial Court had already decided that he would not be allowed to represent himself. Defense counsel pointed out the "crux" of the case — Ralita Franklin's statement and the testimony that the DNA statistics applied solely to non-related people — in an apparent attempt to persuade the Trial Court that Mr. Akins had the ability to represent himself. The Trial Court held that Mr. Akins could not represent himself because he was not prepared to go to trial and because of the complexity of the case due to the DNA evidence.

The Trial Court also held that "[w]ithout granting you [Mr. Akins] a continuance to represent yourself, you are not intelligently and knowingly, in my opinion, making the decision to represent yourself. And for that reason, I'm going to deny your motion." The Trial Court ultimately agreed with the prosecutor that it did not have a problem with Mr. Akins representing himself, but with him representing himself on August 22 due to his lack of preparation.

█ "It is . . . well established that an accused has a constitutional right to represent himself and make a voluntary, knowing, and intelligent waiver of his constitutional right to the assistance of counsel in his defense. But every reasonable presumption must be

indulged against the waiver of fundamental constitutional rights." *Oliver v. State*, 323 Ark. 743, 918 S.W.2d 690 (1996). "To establish a voluntary and intelligent waiver, the trial judge must explain to the accused that he is entitled as a matter of law to an attorney and question him to see if he can afford to hire counsel. The judge must also explain the desirability of having the assistance of an attorney during the trial and the drawbacks of not having an attorney." *Gibson v. State*, 298 Ark. 43, 764 S.W.2d 617 (1989). "The right to counsel is a personal right which the accused may knowingly waive either at the pretrial stage or at trial." *Leak v. Graves*, 261 Ark. 619, 550 S.W.2d 179 (1977) (finding that in view of the appellant's age, education, and recent experience in court, represented by counsel, appellant knowingly and intelligently chose to waive his right to counsel); *see Barnes v. State*, 258 Ark. 565, 528 S.W.2d 370 (1975) (holding that appellant's assertion of his right to represent himself was timely because it was made before the trial commenced).

■ In *Fritz v. Spalding*, 682 F.2d 782 (9th Cir. 1982), the United States Court of Appeals for the Ninth Circuit, considering the appellant's assertion of his right to represent himself accompanied by a motion for continuance, stated that, when a defendant's pretrial motion to proceed *pro se* is accompanied by a request for a continuance, the motion may be denied only upon "an affirmative showing" that the purpose of the pro se motion was to gain delay. The Court further stated that the court "must examine the events preceding the motion to determine whether they were consistent with a good faith assertion of the right and whether the defendant could reasonably be expected to have made the motion at an earlier time."

■ The Trial Court refused to allow Mr. Akins to represent himself because he was not prepared to go to trial on August 22, 1995. Based on our holdings in the *Leak* case and the *Barnes* case, we hold that the Trial Court erred in denying Mr. Akins's request to represent himself at trial because the request was made four days before trial and again on the morning of the trial before the trial began. If the Trial Court had granted Mr. Akins's request to represent himself on August 18 or if the Trial Court had been clearer about its intention to reconsider Mr. Akins's request after

he reviewed his file, then Mr. Akins would have had an opportunity to be prepared for trial, and a motion for continuance might not have been necessary. Additionally, Mr. Akins does not seem to assert his right as a delaying tactic, but rather due to frustration with defense counsel.

As to whether Mr. Akins could have reasonably been expected to raise the motion at an earlier time, we note his undisputed assertion of attempts to assert his right prior to August 18 as well as the confusion regarding the Trial Court's statement that it would reconsider the request on August 22. In these circumstances we do not gainsay the State's concession that reversible error occurred.

Reversed and remanded.