HUMPHREYS, J., concurring, in part, and dissenting, in part:
Because I agree with the majority that the trial court erred in denying Edwards his constitutional right to self-representation, and because I also agree that the request to act pro se was timely made, I join in the majority’s analysis in sections 11(A), 11(B), and 11(C)(1). However, because I believe that there is ample support in the record to support the trial court’s implicit finding that Edwards’ decision to represent himself was made knowingly, voluntarily, and intelligently, I respectfully dissent as to sections 11(C)(2) and 11(D) of the majority opinion, and instead would remand for a new trial at which Edwards can exercise his constitutional right to represent himself.
The Commonwealth asks us to affirm the trial court’s denial of Edwards’ right to self-representation, arguing that Edwards’ waiver was not voluntary, knowing, and intelligent.[4] The majority holds that in this case, the trial judge focused solely on “legal competence,” and failed to make the requisite factual finding regarding the validity of the waiver. The majority states that “[wjhether a defendant’s in-court colloquy with a trial judge ‘clearly and unequivocally’ invokes the right of self-representation involves factual determinations [that *744 are] difficult, if not impossible, to make from a silent paper record.” Accordingly, the majority holds that the “appropriate appellate response is to vacate the convictions” and remand for hearing to determine if the waiver was unequivocal, voluntary, knowing, and intelligent. In my view, the record is anything but silent with regard to Edwards’ invocation of his right to self-representation. Accordingly, a fact-finding hearing is unnecessary, and I would thus reverse and remand for a new trial.
“An assertion of the right of self-representation [ ] must be (1) clear and unequivocal, (2) knowing, intelligent and voluntary, [and] (3) timely.” United States v. Frazier-El, 204 F.3d 553, 558 (4th Cir.2000) (internal citations omitted). In order to be a clear and unequivocal request for counsel, the request must not be stated in uncertain terms or in an uncertain manner. See People v. Mogul, 812 P.2d 705, 709 (Colo.Ct.App. 1991). Here, Edwards asked the trial court, “is it any way I just sign my rights away and withdraw my counsel and represent myself as long as I don’t disrupt and I understand what’s going on and mentally I’m capable and I take the time, then may I represent myself? [sic]” The trial court then stated, “You just indicated to me this morning that you want to proceed without a lawyer today. Is that correct?” Edwards responded, “Yes, sir.”
To determine whether the demand for self-representation is a valid, knowing, and voluntary waiver of the right to counsel, the court must engage the defendant in a conversation to explain the consequences of proceeding pro se, and to make the defendant aware of the dangers and disadvantages of self-representation. See Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). It is only after such dialogue that a trial court can determine whether the waiver is knowing and voluntary, the request for self-representation is unequivocal, and the defendant “knows what he is doing and his choice is made with eyes open.” Adams v. United States, 317 U.S. 269, 279, 63 S.Ct. 236, 242, 87 L.Ed. 268 (1942) (citing Johnson v. Zerbst, 304 U.S. 458, 468-69, 58 S.Ct. 1019, 1024, 82 L.Ed. 1461 (1938)).
*745 Here the record contains a long and specific colloquy between Edwards and the trial court regarding his request to represent himself. The trial court stated that, “before going any further, I want to be sure that you fully understand the consequences of what you are choosing to do.” The trial court then asked Edwards his age and the highest grade in school that he completed. The trial court also acknowledged that it had reviewed Edwards’ psychological evaluation regarding his competency to stand trial. Next the trial court asked Edwards if he was “familiar with this [ ] criminal justice system,” if he knew and understood the charges against him and that he could get life in the penitentiary for his crimes, if he knew or had studied courtroom procedure, and if he knew that there were technical and legal issues which could affect his case. Edwards responded affirmatively to each question.
The trial court continually warned Edwards that “most people who are charged with serious crimes choose to be represented by counsel,” that the court would appoint counsel if he so chose, that “in [his] experience, all [his] years on this bench, even lawyers in your position are represented by counsel,” and that “while you may be legally competent to represent yourself, if you choose to do so, you do so at your own risk.” The following discussion then took place:
[TRIAL COURT]: Do you understand everything I have said to you?
EDWARDS: Yes, I do, sir.
[TRIAL COURT]: Any questions about what I said to you?
EDWARDS: No, sir.
[TRIAL COURT]: Now, you still want to represent yourself?
EDWARDS: Yes.
The trial court persistently warned Edwards of the pitfalls of self-representation, and Edwards acknowledged that he understood the consequences of his choice to waive his right to counsel. Given this extensive colloquy between the trial court and Edwards regarding the disadvantages of exercising his right to self-representation, it cannot be said that his decision *746 to act as his own attorney was anything but “knowing.” There is not a single unequivocal response, nor is there any indication that Edwards is unsure of the consequences of his actions. Moreover, his repeated and unambiguous insistence that he wished to act as his own counsel amply demonstrates both the “unequivocal” and “voluntary” nature of his decision.
Finally, judges and attorneys are intimately familiar with the numerous rules and procedural intricacies that have evolved over time to ensure fairness and decorum in courtroom proceedings. Given our training and experience, it is often difficult—as it apparently was for the trial court here— to conclude that anyone who decides to represent their own interests in a courtroom on a serious criminal offense is making an “intelligent” decision. Nonetheless, in the context of constitutional jurisprudence, an “intelligent” decision means one that is “considered.” See Faretta, 422 U.S. at 835, 95 S.Ct. at 2541 (stating “in order to represent himself, the accused must knowingly and intelligently forgo those relinquished benefits.” Thus, “although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open.” (internal citations omitted)). Considering the trial court’s explicit finding that he was competent to make such a decision, and considering the information Edwards had available to him when he made the decision, in my view, the record here supports only one reasonable conclusion. That is, that Edwards’ decision was considered, deliberate, and therefore “intelligent.”
Thus, contrary to the majority’s assertion that we have a “silent record” regarding the validity of the waiver, I believe that the record fully supports the implicit factual finding that the trial court accepted Edwards’ waiver as clear, unequivocal, knowing, intelligent, and voluntary. This finding is magnified by what the majority terms as the “trial court’s instinctual desire to protect Edwards from himself,” thus leading it to a *747 “legally irrelevant” and erroneous conclusion. The inescapable conclusion is that the trial court denied Edwards his Sixth Amendment right to self-representation based solely upon the fact that it found Edwards lacking in the professional skills to “handle a case before a jury that you can potentially get life in the penitentiary.” The trial court summarized its laudable, but constitutionally infirm, reasoning by succinctly stating, “You need legal representation.”[5]
*748 The record supports the conclusion that the trial court engaged in a sufficient dialogue with Edwards to determine that Edwards’ waiver of his right to self-representation was unequivocal, voluntary, knowing, and intelligent. But see Commonwealth v. Chapman, 8 Mass.App.Ct. 260, 392 N.E.2d 1213, 1218 (1979) (reversing and remanding because the trial court made no effort to inquire into the circumstances of the defendant’s assertion of his pro se right, nor did it establish on the record any legitimate basis for denying the defendant’s request); State v. Thornblad, 513 N.W.2d 260, 264 (Minn.Ct. App.1994) (reversing and remanding for a new trial because the district court’s inquiry was not sufficient to determine that the defendant’s waiver of the right to the assistance of counsel was not knowing and intelligent). Because I believe that the trial court implicitly found that Edwards validly asserted his constitutional right to represent himself, the trial court erred in denying him that right based solely upon the potential life sentence and the trial court’s perception of his “need” for representation. Accordingly, I believe a hearing to determine the validity of Edwards’ waiver is unnecessary. He has validly and timely waived his Sixth Amendment right to counsel, and I would simply remand for a new trial at which Edwards should be permitted to represent himself.[6]

. The Commonwealth also argues that Edwards’ request was not timely made. I agree with the majority’s holding and analysis that this argument is without merit.

. The majority contends that by focusing on "competence,” the trial court erred in applying the correct legal standard for a Faretta inquiry. In the case relied upon by the majority, Frazier-El, 204 F.3d at 558, a trial judge found the defendant, Frazier-El "not competent because of arguments he made to represent himself.” The Fourth Circuit stated,
If this particular statement by the court was intended as an explanation for its refusal to permit Frazier-El to proceed pro se, as Frazier-El now contends, it was an error of law. See Godinez [v. Moran], 509 U.S. [389,] 399, 113 S.Ct. 2680, [2687,] 125 L.Ed.2d 321 [ (1993) ] ("The competence that is required of a defendant seeking to waive his right to counsel is the competence to waive the right, not the competence to represent himself”); Faretta, 422 U.S. at 836, 95 S.Ct. at 2541 (defendant's technical legal knowledge "not relevant to an assessment of his knowing exercise of the right to defend himself”). But we must assume that the court’s statement ... refers only to the legitimacy of the request and the arguments advanced, rather than to Frazier-El’s ability to make a knowing election of self-representation and waiver of counsel. This assumption is confirmed by what the court said next: "Frazier-El understands the nature of the proceedings and is able, if he so desires—he is an intelligent man—to assist in his own defense, if he so desires.”
Id. at 560-61. In other words, the Fourth Circuit affirmed the trial court’s denial of Frazier-El’s request because "[t]he circumstances surrounding Frazier-El’s purported waiver of his right to counsel and the assertion of his right to proceed without counsel in this case suggest more a manipulation of the system than an unequivocal desire to invoke his right of self-representation." Id. at 560. Thus, taking the record as a whole, the trial court was "justified, when confronted with FrazierEl’s vacillation between his request for substitute counsel and his request for self-representation, in insisting that Frazier-El proceed with appointed counsel.” Id.
Unlike in Frazier-El, there is no finding by the trial court that Edwards' request was an attempt to manipulate the system. Although he had been represented by several lawyers, and was difficult to get along with, the record does not reflect that his request was used as a tactic for delay, see United States v. Lawrence, 605 F.2d 1321, 1324-25 (1979), for disruption, see Faretta, 422 U.S. at 834 n. 46, 95 S.Ct. at 2541 n. 46, for distortion of the system, see United States v. Singleton, 107 F.3d 1091, 1102 (1997), or for manipulation of the trial process, see *748 Lawrence, 605 F.2d at 1325. Accordingly, we can assume that the trial judge found that the waiver was valid, but denied Edwards the right to self-representation based solely upon Edwards’ lack of legal expertise.

. Many other jurisdictions reverse and remand for a new trial to remedy a trial court’s error in denying a defendant his Sixth Amendment right to self-representation. See Akins v. State, 330 Ark. 228, 955 S.W.2d 483 (1997); Colorado v. Mogul, 812 P.2d 705 (Colo.Ct.App. 1991); Stigars v. Delaware, 674 A.2d 477 (Del.1996); Michigan v. Overby, 398 Mich. 361, 247 N.W.2d 857 (1976); Thornblad, 513 N.W.2d 260.