Broderick Labrent JONES *v.* STATE of Arkansas

CA CR 99-1119                                          35 S.W.3d 345

Court of Appeals of Arkansas
Divisions III and IV
Opinion delivered December 20, 2000

*Beverly C. Claunch,* for appellant.

*Mark Pryor,* Att'y Gen., by: *Brad Newman,* Ass't Att'y Gen., for appellee.

MARGARET MEADS, Judge. Appellant, Broderick Jones, was convicted by an Izard County jury of attempted capital murder, battery in the second degree, and two counts of terroristic threatening in the first degree. He was sentenced to thirty years on the attempted capital murder charge, six years on the battery charge, and six years on each of the terroristic threatening charges, with the sentences to run consecutively. On appeal, he contends that there is insufficient evidence to support all of the convictions, and that the trial court erred in allowing evidence of a prior offense to be admitted into evidence.

At the time of the offenses, appellant was incarcerated in the North Central Unit of the Arkansas Department of Correction in Calico Rock, Arkansas, serving time for murder in the second degree. Former inmate Ronnie Howard testified that on October 29, 1997, appellant came into one of the prison classrooms and said he was going to "show those guys" he was not weak. Appellant then kicked a table leg from a computer table, grabbed the table leg, proceeded to the office, and struck Officer William Waters twice on the head. John Hill, an instructor/administrator who was in the office at the time, testified that Waters screamed he was paralyzed and could not see, and it appeared to him that Waters was badly

injured. Appellant continued into the room with the table leg over his shoulder, ready to swing it like "a baseball bat or a chopping ·axe." Holding an office chair with the legs pointed in front of him, Hill advanced toward appellant; appellant then retreated into the hall where he was confronted by Joe Grabowski, another instructor at the prison. Grabowski testified that appellant was holding the table leg high in the air "like a Louisville Slugger" and appeared to be agitated and angry. Grabowski ordered appellant to put the table leg down, and appellant told him, "Stay away from me, bitch." Hill also heard appellant say, "I'll kill you, bitch." As appellant retreated down the hallway toward a door leading outside, Officers Goggans and Lively came through the door. According to Grabowski, appellant swung the table leg and hit Goggans in the side of the face "like somebody that was trying to smash a watermelon, bust a pumpkin wide open." Appellant was eventually subdued with pepper spray.

■ Appellant contends there is insufficient evidence to support any of his convictions. We disagree. For evidence to be sufficient, there must be substantial evidence to support the verdict. *Mulkey v. State*, 330 Ark. 113, 952 S.W.2d 149 (1997). Evidence is substantial if it is forceful enough to compel a conclusion one way or the other beyond suspicion and conjecture. *Id.* In determining whether the evidence is substantial to support a conviction, this court views the evidence in the light most favorable to the appellee, only considering the evidence that supports the guilty verdict. *Akins v. State*, 330 Ark. 228, 955 S.W.2d 483 (1997).

Appellant first argues that there is insufficient evidence to support his conviction for attempted capital murder. A person commits capital murder if, with the premeditated and deliberated purpose of causing the death of any law enforcement officer, jailer, or prison official, when such person is acting in the line of duty, he causes the death of any person. Ark. Code Ann. § 5-10-101(a)(3) (Repl. 1997). A person attempts to commit an offense if he "purposely engages in conduct that constitutes a substantial step in a course of conduct intended to culminate in the commission of an offense whether or not the attendant circumstances are as he believes them to be." Ark. Code Ann. § 5-3-201(a)(2) (Repl. 1997).

■ In his brief, appellant argues that not only did the State fail to prove that he acted with the premeditated and deliberated pur-

pose necessary to be convicted of attempted capital murder, but also that there was no evidence Waters's injuries were life-threatening. The only one of these arguments preserved for appeal is that appellant did not have the necessary intent to be convicted of attempted capital murder, because that was the only argument made in appellant's motions for directed verdict at trial. Our law is well settled that we will not consider an argument raised for the first time on appeal and that a party is bound by the scope and nature of the arguments made at trial. *Pyle v. State*, 340 Ark. 53, 8 S.W.3d 491 (2000).

Appellant argues that his actions do not support the finding of premeditated and deliberated purpose because he acted impulsively and on the spur of the moment, and he struck Waters only twice. He contends that if it had been his intent to end Waters's life, he would have struck additional blows instead of retreating.

A person's intent or state of mind at the time of an offense is seldom apparent. *Tarentino v. State*, 302 Ark. 55, 786 S.W.2d 584 (1990). One's intent or purpose, being a state of mind, can seldom be positively known to others, so it ordinarily cannot be shown by the facts and circumstances in evidence. *Kendrick v. State*, 37 Ark. App. 95, 823 S.W.2d 931 (1992). Since intent cannot ordinarily be proven by direct evidence, the jurors are allowed to draw upon their common knowledge and experience to infer intent from the circumstances. *Robinson v. State*, 293 Ark. 243, 737 S.W.2d 153 (1987). Because of the difficulty in ascertaining a person's intent, a presumption exists that a person intends the natural and probable consequences of his acts. *Tarentino, supra.* The intent to commit the offense may be inferred from the defendant's conduct and the surrounding circumstances. *Durham v. State*, 320 Ark. 689, 899 S.W.2d 470 (1995). Premeditation need not exist for a particular length of time; it may be formed in an instant. *Bangs v. State*, 338 Ark. 515, 998 S.W.2d 738 (1999).

Here, there was evidence that Officer Waters served on a committee that disciplined appellant only two days before the incident and that appellant was unhappy with the outcome. The jury could infer that appellant formed his premeditated intent at that time, and the first time he was able to act upon that intent was two days later, when he grabbed the leg from the computer table and used it as a club, striking Waters in the head. Thus, there is suffi-

cient evidence from which a jury could conclude that appellant's attack was premeditated and deliberate.

Appellant also argues that there is insufficient evidence to support his conviction of second-degree battery on Officer Goggans. He contends the State failed to demonstrate that he acted knowingly and with the purpose of causing injury to Officer Goggans. A person commits the offense of battery in the second degree if he intentionally or knowingly without legal justification causes physical injury to one he knows to be an employee of a correctional facility while such person is acting in the line of duty. Ark. Code Ann. § 5-13-202(a)(4)(A) (Repl. 1997). A person acts "knowingly" with respect to his conduct or the attendant circumstances when he is aware that his conduct is of that nature or that such circumstances exist. Ark. Code Ann. § 5-2-202(2) (Repl. 1997).

■ Appellant's argument is without merit. Appellant armed himself with a table leg as he went down the hall. When he approached a doorway, Officers Goggans and Lively entered the door and confronted him. Appellant swung the table leg at Goggans, striking him in the face. Goggans testified that the blow was very painful, and it was so strong that he almost blacked out. He stated that the marks on his face from the blow lasted a day and that he had a knot on his jawbone that was still tender. Grabowski testified that appellant swung the table leg at Goggans like he was trying to smash a watermelon or pumpkin. Clearly, there is sufficient evidence to support the finding that appellant knowingly struck Goggans in the face and intended to cause injury.

Next, appellant contends that there is insufficient evidence to support the two convictions for first-degree terroristic threatening. These convictions pertained to John Hill and Joe Grabowski, both of whom were teachers at the prison school. A person commits terroristic threatening in the first degree if with the purpose of terrorizing another person, he threatens to cause physical injury or property damage to a teacher or other school employee acting in the line of duty. Ark. Code Ann. § 5-13-301(a)(1)(B) (Repl. 1997).

■ Appellant contends that the State failed to show that he acted with the purpose of terrorizing Hill and Grabowski. In support of this argument, he asserts that he never advanced on Hill or Grabowski, rather they advanced on him. We disagree. Hill and

Grabowski made no movement toward appellant until his attack on Officer Waters. Both men testified that after this attack, appellant continued to hold the table leg in a raised position. Appellant indeed struck Goggans when Goggans approached him. Hill heard appellant say, "I'll kill you bitch," and Grabowski heard him say, "Stay away from me, bitch." There is sufficient evidence from which the jury could infer that appellant had the purpose to terrorize Hill and Grabowski and that he threatened physical injury to both men.

Finally, appellant contends the trial court erred in allowing evidence of a prior conviction into evidence. At the time of these offenses, appellant was serving a prison term for second-degree murder for beating a man to death with a baseball bat. Appellant argued at trial that evidence of the prior conviction was not admissible under Rule 404(b) of the Arkansas Rules of Evidence because the purpose was to show his bad character. He further argued that even if the prior conviction was admissible under Rule 404(b), it was nevertheless inadmissible under Ark. R. Evid. 403 because any probative value would be substantially outweighed by the danger of unfair prejudice. The State contended the prior conviction was admissible to show motive. The trial court determined that the evidence was highly probative of the issue of appellant's intent, plan, motive, or absence of mistake or accident, and that the probative value outweighed any danger of unfair prejudice. After allowing evidence of appellant's second-degree murder conviction to be placed in evidence, the trial judge read a limiting instruction to the jury stating that evidence of other crimes could not be considered to prove appellant's character and that he acted in conformity therewith, but that the evidence was offered as evidence of motive, opportunity, intent, plan, or knowledge.

Evidence offered under Rule 404(b) must be independently relevant, thus having a tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. *Gaines v. State*, 340 Ark. 99, 8 S.W.3d 547 (2000). The admission or rejection of evidence under Rule 404(b) is committed to the sound discretion of the trial court, and we will not reverse absent a showing of manifest abuse. *Id.* We have long recognized that the list of exceptions to inadmissibility under Rule 404(b) is not an exclusive list but represents examples where such crimes, wrongs, or acts would be

relevant and admissible. *Regalado v. State*, 331 Ark. 326, 961 S.W.2d 729 (1998).

██ The trial judge did not abuse his discretion in admitting evidence of appellant's second-degree murder conviction. In the earlier case, appellant committed murder by striking a man on the head with a baseball bat; in the present case, appellant attempted to commit capital murder by using a table leg swung like a baseball bat to strike Waters in the head. This evidence provides independent relevance of the fact that appellant knew a club such as a baseball bat or table leg could cause death, and that he planned to use the same type of weapon to kill Waters as he did to kill his first victim. *See, e.g., McGehee v. State*, 338 Ark. 152, 992 S.W.2d 110 (1999) (finding that similarities between earlier beating of another person and killing of victim was sufficient for admission under Rule 404(b)).

The dissent contends, citing *Alford v. State*, 223 Ark. 330, 226 S.W.2d 804 (1954), a rape case, that appellant's prior bad act is not admissible. The portion of the opinion cited by the dissent concerns "guilty knowledge," which was certainly present in this case. The dissent asserts that it is "commonly known by any adult that a blow to the head can kill." This broad assertion does not withstand scrutiny. Not every blow to a person's head is deadly; otherwise, the sports of boxing and football would not exist. However, in this particular case, the appellant had specialized knowledge from previous experience that hitting a person over the head with an object similar in shape, size, and composition to a baseball bat could cause death. He knew this because he had previously caused death in such a manner using such an object. The dissent's attempt to distinguish the prior act is weak at best.

██ ██ Appellant also contends that under Rule 403, the admission of his prior conviction substantially prejudiced the jury against him because he was assessed the maximum term of imprisonment, even though the victim's injury was only "a tear in his scalp [that] did not result in any permanent disability." The trial court has the discretion to determine whether prejudicial evidence substantially outweighs its probative value, and its judgment will be upheld absent a manifest abuse of discretion. *McGehee v. State, supra.* Although the prior conviction may have been prejudicial to appellant, the probative value of that conviction is not substantially outweighed by the danger of unfair prejudice to appellant. The jury

already knew, from the circumstances surrounding the case, that appellant was in prison for some type of crime, and the evidence at trial was overwhelming that appellant committed the acts with which he was charged. Simply because appellant did not succeed in killing Waters does not lessen the severity of the crime. It is appellant's burden to demonstrate prejudice, and he has failed to show that his sentence was based upon anything other than the evidence presented on the charges for which he was tried.

Affirmed.

PITTMAN, JENNINGS, and CRABTREE, JJ., agree.

HART and ROAF, JJ., dissent.

ANDREE LAYTON ROAF, Judge, dissenting. I would reverse and remand for a new trial Jones's conviction for attempted capital murder because the trial court erred in allowing evidence of Jones's prior offense to be admitted during the guilt phase of his jury trial. His trial was rendered grossly unfair by the admission of this minimally relevant at best, but highly prejudicial evidence.

The facts underlying the conviction are largely not in dispute. Jones was serving time at Calico Rock for second-degree murder when he attacked members of the corrections staff with a table leg, resulting in four convictions, including one for attempted capital murder. The conduct underlying that charge involved Jones striking one of the corrections officers, William Waters, once in the head and once in the shoulder with the table leg. Despite the severity of the attack, the State apparently believes, and I agree, that the requisite culpable mental state to commit attempted capital murder was not readily apparent from the circumstances. The State therefore sought to prove this intent through the introduction of details of Jones's prior second-degree murder conviction, which involved his causing the death of an acquaintance by striking him in the head with a baseball bat. When the State sought to introduce this evidence, Jones preserved both Ark. R. Evid. 404(b) and 403 arguments for appeal.

It is axiomatic that evidence of prior misconduct is not admissible to show that the person on trial is a bad person and is therefore

more likely to have committed the act in question. The presumption of innocence does not allow for the proposition "he did it before, therefore he must have done it again," or in this case, *tried* to do it again.

Rule 404(b) states:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Ark. R. Evid. 404(b). The test for establishing motive, intent, or plan as a Rule 404(b) exception is whether the evidence of the other act has independent relevance. *Haire v. State*, 340 Ark. 11, 8 S.W.3d 468 (2000). Evidence is indisputably relevant if it proves a material point and is not introduced solely to prove that the defendant is a bad person. *Id.* The decision to admit evidence under a Rule 404(b) exception is discretionary with the trial court. *Id.*

At first blush, the probative value of the prior murder conviction appears to be substantial. The table leg was similar in size and shape to a baseball bat, and in both cases, Jones aimed at the victims' head. However, the probative value of the prior offense cannot exist in a vacuum; it must relate to a specific element of the charged crime. In this case it can relate only to the intent element, since very different results and different crimes ensued in the two incidents. Otherwise, the prior conviction would clearly be characterized as an attempt to inform the jury of Jones's propensity to engage in the same kind of conduct.

The requisite intent element for the applicable capital murder offense is that the perpetrator act with premeditated and deliberated purpose to cause death. Ark. Code Ann. § 5-10-101(a)(3) (Repl. 1997) states in pertinent part:

> (a) A person commits capital murder if:
>
> . . .
>
> (3) With the premeditated and deliberated purpose of causing the death of any . . . jailer, prison official . . . when such person is acting in the line of duty, he causes the death of any person.

However, Jones's prior conviction was for second-degree murder. The intent element of second-degree murder requires that the perpetrator act knowingly in causing death under conditions manifesting extreme indifference to human life or purposely with regard to causing serious physical injury.

In pertinent part, Ark. Code Ann. § 5-10-103 (Repl. 1997) states:

> (a) A person commits murder in the second degree if:
>
> (1) He knowingly causes the death of another person under circumstances manifesting extreme indifference to the value of human life; or
>
> (2) With the purpose of causing serious physical injury to another person, he causes the death of any person.

Accordingly, the only logical inference that can be drawn regarding Jones's intent was that he was acting "knowingly" or "purposely" to cause serious physical injury. Knowingly is defined by Ark. Code Ann. § 5-2-202(2) (Repl. 1997) as: "A person acts knowingly with respect to his conduct or the attendant circumstances when he is aware that his conduct is of that nature or that such circumstances exist. A person acts knowingly with respect to a result of his conduct when he is aware that it is practically certain that his conduct will cause such a result." This is clearly insufficient to satisfy the culpable mental state of the applicable portion of our capital murder statute.

As far as the purposeful intent in our second-degree murder statute, it is also insufficient to satisfy the culpable mental state for the applicable portion of our capital murder statute. While it is true that the intent element for both capital murder and second-degree murder may be satisfied by purposeful conduct, defined by Ark. Code Ann. § 5-2-202(1) as: "A person acts purposely with respect to his conduct or a result thereof when it is his conscious object to engage in conduct of that nature or to cause such a result," the object of the purposeful conduct is markedly different. As noted above, the purposeful conduct in capital murder is to cause the death of a prison official or jailer, whereas the purposeful conduct in second-degree murder is to cause "serious physical injury." In short, evidence of prior conduct where Jones acted knowingly or purposely with respect to causing serious physical injury cannot

constitute proof that similar conduct is an attempt to purposefully cause the death of a person. Where the evidence of a prior bad act is not clearly probative of a substantial element of the charged offense, it is error to admit it. *See State v. Robtoy*, 653 P.2d 284 (Wash. 1982).

With regard to relevance, at trial, the State argued that the prior conviction was probative primarily of Jones's "motive." On appeal, the State now contends that the prior conviction established that Jones "understood what he was doing and the potential consequences of his conduct," and was relevant due to the "similarity of the methods employed," and Jones's "first-hand knowledge" of the damage that could result from such conduct. The majority apparently agrees, at least in part, with the State's argument on appeal and opines that the evidence provided independent relevance that Jones "knew" a club could cause death and "planned" to use a similar weapon to kill Waters. The majority cites to *McGehee v. State, supra*, as authority for this proposition.

However, there is a big problem with holding that the prior conviction is admissible to show Jones's knowledge. First, the prior crimes and bad acts admitted in *McGehee* were found by the trial court to be part of the circumstances leading up to and explaining the crime for which McGehee was being tried. The supreme court agreed and stated that "our court has repeatedly held that all the circumstances surrounding a particular crime may be shown, even if the circumstances would constitute a separate criminal act or acts, when the criminal acts are intermingled and contemporaneous with one another." 338 Ark. at 169, 992 S.W.2d at 120. Clearly Jones's prior conviction cannot, by any stretch of the imagination, fall within this category of "knowledge," and *McGehee* does not provide any authority whatsoever for its admission during his trial.

Secondly, the "knowledge" referred to in Rule 404(b) is not general facts and information, but rather "guilty knowledge." In *Alford v. State*, 223 Ark. 330, 266 S.W.2d 804 (1954), an opinion that has been cited more than fifty times for its discussion of prior bad acts evidence, Justice George Rose Smith stated:

> Perhaps the most frequent resort to evidence of recent similar offenses occurs in the cases involving guilty knowledge. In such cases good faith would be a defense to the charge; the vital issue is whether the defendant knew his conduct to be wrongful. For

> example, it is not a crime to pass a forged check in the belief that it is genuine, but the same conduct is criminal when done with knowledge that the instrument is bogus. Since it is highly improbable that an innocent man would repeatedly come into possession of forged checks, proof of recent similar offenses bears directly on the issue of guilty knowledge. In this category fall cases involving forgery, counterfeiting, false pretenses, knowledge that an establishment is a gambling house, and many other situations.

(Citations omitted.) Testimony concerning Jones's prior conviction clearly does not fall within this category of admissible prior bad act evidence. Moreover, it is commonly known by any adult that a blow to the head can kill, and therefore, Jones's prior conviction falls squarely within the class of prior acts that ought not be admissible in a fair trial; a prior rape is not admissible to show a defendant "knows" how to rape, and a prior burglary is not admissible to show that a defendant "knows" how to commit burglary. *See* Teresa S. Ozias, Comment, *Bad Acts in Oregon: OEC 404(3)*, 25 Willamette L. Rev. 829 (1989).

The evidence in this case also does not fall within the *"modus operandi"* exception. Prior crimes involving similar methods or *modus operandi* are admissible as an exception to Rule 404(b) only where the *identity* of the perpetrator is at issue and the method itself is unique. *See, e.g., Tarkington v. State*, 250 Ark. 972, 469 S.W.2d 93 (1971). As to Jones's "plan," to the extent he "planned" an attack, he surely carried it out; whether he intended a murder is the question. The prior conviction can again be said only to impermissibly communicate to the jury that "he did it before; therefore he must have intended to do it again," without having relevance to any element of the crime charged.

Furthermore, assuming, arguendo, that the evidence is relevant, and passes 404(b) muster, it can only be admissible if the evidence passes the balancing test in Ark. R. Evid. 403, which provides that relevant evidence may be excluded if the probative value is *substantially* outweighed by, among other things, the danger of unfair prejudice. The Advisory Committee Note to Rule 403 explains that "unfair prejudice" within the context of the rule means "an undue tendency to suggest a decision on an improper basis, commonly, though not necessarily, an emotional one." Obviously, evidence concerning Jones's conviction for a prior murder is extremely prejudicial, particularly where Jones has once again taken

up a similar weapon to commit a battery. I submit that the prejudice clearly outweighs whatever probative value the prior conviction may have had in this case. In sum, the only element of the crime that it could possibly pertain to is intent, and it should not even survive a careful 404(b) analysis if its purpose was to show "knowledge," similar method, or plan, as it clearly had no relevance regarding motive. Moreover, even if Jones's prior conviction had some probative value to prove motive, which I certainly do not concede, there was ample evidence of Jones's motive in the testimony about his anger at being disciplined and his desire to secure a transfer away from Calico Rock. The existence of this other evidence affords the probative value of the conviction substantially less weight, and therefore does not allow it to survive a 403(b) balancing. *See Golden v. State*, 10 Ark. App. 362, 664 S.W.2d 496 (1984).

The State's real message to the jury was "He did it before, so he tried to do it again." The jurors were not confused; they receive this kind of message loud and clear. Because this evidence should not have been admitted, no instruction could cure this prejudice. *See Alford v. State, supra.* As Justice George Rose Smith stated in *Alford*, "[T]he issue goes to the very heart of fairness and justice in criminal trials; we cannot conscientiously sustain a verdict that may have been influenced by such prejudicial testimony." I would reverse and remand for a new trial of the attempted capital murder charge.

HART, J., joins.