Calvin Jarome DAVIS  *v.*  STATE of Arkansas

CR 06-766                                        246 S.W.3d 433

Supreme Court of Arkansas
Opinion delivered January 4, 2007

*William R. Simpson, Jr.*, Public Defender, *Don Thompson*, Deputy Public Defender, by: *Clint Miller*, for appellant.

*Mike Beebe*, Att'y Gen., by: *Beth B. Carson*, Ass't Att'y Gen., for appellee.

TOM GLAZE, Justice. We take this case on review from the court of appeals. The events that led to this review arose from Calvin Davis having been charged in December 2002 with theft by receiving in case number CR 02-4246. On August 25, 2003, Davis entered a negotiated plea of guilty to the theft-by-receiving charge and was sentenced to three years' probation, required to pay $300 fine and court costs, required to perform forty hours of community service, and required to submit a DNA sample. This probationary sentence was conditioned upon Davis's compliance with written rules of conduct.

Later, on July 6, 2005, the State filed an amended petition for probation revocation in case number CR 02-4246, wherein it alleged Davis had violated the terms of his probation by committing the new criminal offenses of (1) attempt to commit residential burglary, (2) kidnapping, and (3) fleeing on October 28, 2004. The State also alleged that Davis had failed to report and failed to pay supervision fees.

The new criminal charges were filed in case number CR 04-4879 on December 1, 2004, and after the State amended its three-count information against Davis,[1] the case proceeded to a jury trial on July 26, 2005. At the conclusion of the jury trial, the jury found Davis guilty of attempted residential burglary, kidnapping, and fleeing.

---

[1] The State first charged Davis with the attempt to commit residential burglary and assault in the first degree and fleeing. However, on July 7, 2005, the State amended its

In his appeal, Davis challenges the felony kidnapping and attempted residential burglary convictions and argues the State failed to prove the elements of these two felony convictions. The State alleged, in case number CR 04-4879, that, on October 28, 2004, Davis committed a felony kidnapping offense against a woman named Ashley Jones. Also, in that same case, the State charged that, on October 28, 2004, Davis committed the felony crime of attempted residential burglary against a woman named Martina Kindig, who was in her apartment when Davis tried to gain entrance. Davis appealed these felony convictions, and his counsel also included a "no merit" argument regarding the revocation of his probation. Davis responded to his lawyer's "no merit" argument by filing a one-page pro se brief.

We first turn to Davis's argument that the State's evidence is insufficient to support the kidnapping conviction. The crime of kidnapping is defined in Ark. Code Ann. § 5-11-102(a)(4) & (5) (Repl. 1997), which, in relevant part, provides as follows:

> (a) A person commits the offense of kidnapping if, without consent, he restrains another person so as to interfere substantially with his liberty with the purpose of:
>
> . . . .
>
> (4) Inflicting physical injury upon him, . . . ; or
>
> (5) Terrorizing him or another person. . . .

The relevant facts of the case pertaining to this kidnapping issue are as follows. On October 27, 2004, Ashley Jones had been "hanging out" with friends at Kevin Lunsford's apartment on Green Mountain Drive in Little Rock. In the early morning hours of October 28, 2004, Jones said that she stepped outside of Lunsford's apartment to smoke when she was approached by Davis. She denied knowing him. Jones claimed Davis, without her consent, picked her up around her waist and moved quickly around the corner of the apartment building. Lunsford heard Jones's scream, and he went outside to see what was going on. He

---

information to charge Davis with kidnapping in place of first-degree assault. It also charged him with being a habitual offender who had been previously convicted of more than one but less than four felonies.

saw Davis carrying Jones around the apartment building, and Jones was screaming. Lunsford testified that Davis had one hand over Jones's mouth, and he saw Jones hitting Davis as she screamed and kicked him. When asked what caused Davis to stop, Jones said that Lunsford was a couple of minutes behind her and he yelled "stop," and Davis just dropped her and "took off running."

After the State concluded its case, Davis moved for directed verdict, arguing that the State failed to introduce substantial evidence that Davis restrained Jones for the purpose of facilitating the commission of a felony, or inflicting physical injury on her, or engaging in sexual intercourse with her, or terrorizing her.[2] The circuit court denied Davis's motions. The circuit court was correct.

The applicable law in this case is well settled, and Davis recognizes it in arguing his case. The mistake in his analysis occurs when he applies the law to the facts of this case. In *Green v. State*, 313 Ark. 87, 852 S.W.2d 110 (1993), this court held that kidnapping or attempted kidnapping requires that the victim's liberty be restrained without consent, and restraint without consent is defined as including restraint by physical force. The *Green* court held that substantial interference with another person's liberty does not require that the interference be for a substantial period of time. *Id*. The court further concluded that the purpose may be inferred from circumstantial evidence, and intent to commit a crime may also be inferred from the circumstances. *Id; see also Jackson v. State*, 290 Ark. 160, 717 S.W.2d 801 (1986).

Here, Davis contends the State failed to prove he made any threatening statements to Jones when he restrained her. He further argues there was no proof that he had in his possession any weapon, tool, or anything else that would have permitted the jury to infer he had the purpose to commit any felony, or to inflict physical injury on Jones, or to have sexual intercourse with her, or to terrorize her or any other person. Finally, Davis also argues that Jones never testified that she was terrorized while Davis restrained her. We see no merit in Davis's rendition of the facts in his effort to overturn the circuit court's denial of his directed-verdict motions.

---

[2] The circuit court did grant Davis's motion to reduce the kidnapping charge from a Class Y felony to a Class B felony because he voluntarily released Jones alive and in a safe place.

■ We easily conclude that, when the evidence is taken in the light most favorable to the State, the obvious conclusion for the jury to draw was that Davis's purpose of his restraint of Jones was for inflicting physical injury on her or terrorizing her. As already discussed above, when Davis approached Jones outside of Lunsford's apartment, Jones testified that Davis, a man she did not know, picked her up by the waist and ran around the corner of the apartment building, as she was screaming and kicking. When Lunsford came out of his apartment to determine what was happening, he saw Davis running from the apartment. Lunsford stated that Davis had one hand over Jones's mouth, and Lunsford yelled for Davis to stop, which Davis did, although he kept running afterward. Lunsford testified that he thought Davis was carrying her behind the dumpster, and he "didn't think . . . anything good was going to happen out of that." Davis was later located by the police, lying under patio furniture in a nearby apartment complex. The police said that Davis advised that he was "high on speed and didn't know what was going on." At that point, officers told him he was under arrest for fleeing. Although Davis now claims that he never made a threatening statement to Jones, the officer testified that Jones was clearly upset, nervous and crying as a result of her restraint. In sum, we hold the State offered substantial circumstantial evidence that would have enabled the jury to reasonably infer that Davis restrained Jones for the purpose of physically injuring or terrorizing her.

For his second point on appeal, Davis argues that the circuit court erred in denying his motions for directed verdict on the criminal-attempt-to-commit-residential-burglary charge. A person commits the offense of residential burglary if he enters or remains unlawfully in a residentially occupiable structure of another person with the purpose of committing therein any offense punishable by imprisonment. Ark. Code Ann. § 5-39-201(a)(1) (Repl. 1997). Likewise, a person attempts to commit an offense if he purposely engages in conduct that constitutes a substantial step in a course of conduct intended to culminate in the commission of an offense whether or not the attendant circumstances are as he believes them to be. Id. § 5-3-201(a)(2).

At trial, Ms. Martina Kindig testified that around 5 a.m. on October 29, 2004, she was in her bathtub when she heard a loud noise outside her bedroom window. She was startled and wrapped

a towel around her to see what the commotion was coming from outside. When she looked outside the peep hole, she did not see anyone, but she could see that the screen from her bedroom window had been removed. Then, she also noticed that, while the door to the apartment was still locked, the door was slightly ajar. Kindig alleged that Davis suddenly started kicking and beating on the door, demanding to be let in. When she asked who was at the door, Kindig testified that Davis said he was a "maintenance man" from the apartment complex and demanded to be let in. When she told him to go away and that she was going to call the cops, he screamed, "Call the f***ing cops." She stated that he kicked the door so hard that the door had to be replaced. Kindig refused to let him in and went outside to the apartment balcony to scream for help, and she also called the police. The police officers attested that they overheard this commotion on their radios. Upon responding to the scene, they saw Davis and yelled for him to stop. Davis continued to run, but he was eventually apprehended.

■ Davis admits that he committed third-degree assault against Kindig under Ark. Code Ann. § 5-13-207(a), but he argues that committing third-degree assault does not mean that he had the purpose to harm Kindig once he gained entry to her apartment. This argument, too, must fail. While Davis did not gain entry to the apartment, he completed a substantial step of gaining entry by severely damaging the door. Moreover, Davis was relentless in his efforts to gain entry, leaving only after the police were in the area. From this conduct, the jury could certainly infer that Davis intended to cause Kindig injury once he gained entry into the apartment. The circuit court did not err in denying Davis's motion for directed verdict with respect to this charge.

While the jury was deliberating in CR 04-4879, the circuit court heard testimony from Davis's probation officer, Melinda Perkins. Perkins attested that Davis had not reported to her since March 15, 2004, well more than a year and three months. Perkins also noted to the circuit court that Davis had also failed to pay any of his supervision fees since that time. Countering that testimony, Davis testified that he had been seeing the probation supervisor, and he had been advised that he did not have to pay fees while his "funds were low." The circuit court reserved its ruling on the probation revocation petition until after the jury's deliberation in CR 04-4879 concluded. Consequently, after entry of the jury's verdict, the circuit court revoked Davis's probation and sentenced him to ten years in the Arkansas Department of Correction in CR

02-4246, with the sentences to run concurrently with CR 04-4879. This was the only adverse ruling against Davis in the probation revocation hearing.

Under Ark. Code Ann. § 5-4-309(d) (Supp. 2005), a circuit court may revoke a defendant's probation at any time prior to the expiration of the probation period if it finds by a preponderance of the evidence that the defendant had inexcusably failed to comply with a condition of his probation. In the probation revocation proceedings, the State had the burden of proving that Davis violated the terms of his probation, as alleged in the petition, by a preponderance of the evidence, and this court will not reverse that decision unless it is clearly against the preponderance of the evidence.

■ Here, the State presented evidence that Davis failed to report and failed to pay his fees. But, more importantly, the jury, in CR 04-4879, convicted him of three criminal offenses, which were clear violations of his probation. Certainly, these convictions were sufficient to support the revocation of Davis's probation.

Affirmed.

DANIELSON, J., not participating.