--------
N. MARK KLAPPENBACH, Judge *232 Appellant Richard Leroy Turner was found guilty by a jury of kidnapping following a trial in Washington County Circuit Court. This charge related to allegations that Turner attacked April Robertson as she ran on a trail around Lake Fayetteville, dragging her off the trail and into the woods. The jury sentenced Turner, as a habitual offender, to thirty years in prison. Turner appeals and argues that the trial court committed reversible error in the following ways: (1) by denying his motion for directed verdict; (2) by denying his motions for a continuance and mistrial and by improperly restricting his cross examination of a law enforcement witness, all related to alleged discovery violations by the State; (3) by permitting improper Rule 404(b) evidence; and (4) by refusing to appoint a special prosecutor. We affirm.
The evidence presented at trial is as follows. On a Sunday afternoon in September 2015, April Robertson began a run along the paved trail at the lake. She was wearing a headband and had earbuds in her ears to listen to music. Robertson passed by a man, later identified as Turner, whom she described as being a white male of average height and weight, with short dark hair and a scruffy face, wearing a dark shirt, cargo shorts, a ball cap, sunglasses, a backpack, and a ring that had the word "dad" on it. He was not wearing athletic clothing. She said that Turner looked at her, smiled, and waved. Shortly thereafter, Turner ran up behind her, put his arm over her shoulder, grabbed her around the neck, tackled her to the ground, got on top of her, and began to beat her in the face. Robertson testified that Turner pinned her to the ground by straddling her with one leg on either side of her. She lost count of how many times she was punched, but she knew that it was at least seven times and that he used both fists. When she screamed, Turner choked her to get her to stop, wrapping both hands around her neck and making it difficult for her to breathe. She said that Turner alternated between punching her, choking her, and putting his hand over her mouth to stop her from screaming.
Then, Turner grabbed her by the shoulders and dragged her into the woods through brush and briars, so far that she could no longer see the paved running trail. She recalled that he threatened her if she screamed again. Robertson was eventually able to stand up a few feet away from Turner, and she asked why he had attacked her. She said that Turner told her that someone had taken his daughter and that there were "blacks in the woods" with guns who would have picked her off the trail if he had not. Turner also told her that if she called emergency services, someone would kill his daughter. Then, he asked to use her cell phone. Instead, Robertson called her boyfriend to tell him what had happened; Turner was pacing back and forth. She asked Turner where the paved trail was, he pointed it out to her, and he started walking in that direction. When they reached the trail, Turner went left and she went right. Robertson called 911 and described Turner as a white male in his midthirties of average height and weight, and she described what he was wearing.
When police officer Mike Hammons arrived on scene, Robertson was crying, shaking, and visibly upset with scrapes on her arms and legs and marks on her face. Photographs of her injuries were entered into evidence. Another officer, Shawn Allen, searched the area and found Robertson's headband and earbuds along with a pair of sunglasses. Subsequent DNA testing provided a link between the sunglasses *233 and Turner. When he was arrested in November 2015, Turner was wearing a gold ring that had the word "dad" on it; he claimed to have lost another similar ring that was silver.
Turner moved for directed verdict at the appropriate times during trial, and those motions were denied. In the motions, Turner argued that there was insufficient evidence to identify him as the perpetrator, to show that he interfered substantially with Robertson's liberty, or to prove that he had the purpose to inflict physical injury or to terrorize her. Turner was convicted, and this appeal followed.
When we review the denial of a directed-verdict motion challenging the sufficiency of the evidence, we view the evidence in the light most favorable to the verdict. Conway v. State , 2016 Ark. 7, 479 S.W.3d 1. That means we consider only the evidence that supports the verdict and determine whether the verdict is supported by substantial evidence. Id. Substantial evidence is evidence of sufficient certainty and precision to compel a conclusion one way or another and pass beyond mere suspicion or conjecture. Holly v. State , 2017 Ark. 201, 520 S.W.3d 677. We do not weigh the evidence presented at trial or assess the credibility of the witnesses, as those are matters for the fact-finder. Reynolds v. State , 2016 Ark. 214, 492 S.W.3d 491.
Turner was charged with kidnapping pursuant to Arkansas Code Annotated section 5-11-102(a)(4) and (a)(6) (Repl. 2013). The amended felony information alleged that Turner, without Robertson's consent, restrained her and interfered substantially with her liberty with the purpose of inflicting physical injury on her or terrorizing her. "Restraint without consent" includes restraint by physical force, threat, or deception. Ark. Code Ann. § 5-11-101(3)(A). In defining kidnapping, the Criminal Code speaks in terms of restraint rather than removal. Snider v. State , 2010 Ark. App. 694, 378 S.W.3d 264. Hence, the statute reaches a greater variety of conduct because restraint can be accomplished without removal. McFarland v. State , 337 Ark. 386, 989 S.W.2d 899 (1999). A person acts purposely with respect to his conduct or a result of his conduct when it is his *234 conscious object to engage in conduct of that nature or to cause that result. Ark. Code Ann. § 5-2-202(1).
Substantial interference with another person's liberty does not require that the interference be for a substantial period of time. Davis v. State , 368 Ark. 351, 246 S.W.3d 433 (2007). Restraint alone will suffice; removal is not required. Singleton-Harris v. State , 2014 Ark. App. 436, 439 S.W.3d 720. The State need only prove that the accused restrained the victim so as to interfere with the victim's liberty, without consent, for a specific purpose outlined in the statute. Id. It is the quality and nature of the restraint, rather than its duration, that determines whether a kidnapping charge can be sustained. Id.
We hold that there was substantial evidence of restraint of Robertson's liberty. She was tackled to the ground by Turner, who straddled her body, beat her with his fists, and choked her with his hands. Turner dragged the victim into the woods until she could no longer see the running trail. This demonstrates substantial interference with the victim's liberty, given that there is physical restraint and removal of the victim from the location where she was initially taken down. There was ample evidence on which to submit this charge to the jury.
Third, Turner contends that there was insufficient evidence that his purpose was to inflict physical harm on her or terrorize her. He asserts that another equally reasonable conclusion can be drawn from these circumstances: that he was having "a mental episode"[1] and had only the intent to protect Robertson from other unknown assailants. We disagree *235 and hold that there was substantial evidence of Turner's purposeful intent.
A person's intent or state of mind at the time of an offense is seldom apparent. Tarentino v. State , 302 Ark. 55, 786 S.W.2d 584 (1990). One's intent or purpose, being a state of mind, can seldom be positively known by others. Jones v. State , 72 Ark. App. 271, 35 S.W.3d 345 (2000). Since intent cannot ordinarily be proved by direct evidence, the jurors are allowed to draw on their common knowledge and experience to infer intent from the circumstances. Id. Because of the difficulty in ascertaining a person's intent, a presumption exists that a person intends the natural and probable consequences of his acts. Id.
Moving to Turner's next point on appeal, he asserts that the trial court erred by denying his motions for a continuance or for a mistrial and by unfairly restricting his cross-examination of a police officer. In summary, Turner contends that the State failed to abide by its discovery obligations, revealing only days before trial that there had been two other suspects and failing to reveal particular aspects of law enforcement's investigation of those suspects. Defense counsel repeatedly asked for a continuance to further investigate those two suspects, which was denied. The trial court also found that this information was not exculpatory. Turner moved for mistrial during examination of a police officer on the basis that his testimony revealed the existence of a video (a dashboard-camera recording) of one of the other potential suspects that had not been provided to the defense. Turner contends that the trial court's refusal to continue the matter or to grant a mistrial constitutes an abuse of discretion warranting reversal. We disagree.
A more detailed factual background is necessary to examine this issue. On Friday, November 11, 2016, which was five days before trial, the State learned that during the initial investigation, Detective Knotts had shown pictures of two men (Joel Francis and Ryan Graves) to Robertson and that she denied that either one was her attacker. The State emailed this information to defense counsel as soon as it became aware of this information. Defense counsel filed a motion for a continuance. The trial court conducted a hearing on Monday, November 14, 2016. Knotts testified that he had asked other officers to notify him if there were other reports of men exhibiting strange behaviors in the area of Robertson's attack. Within a few weeks, two officers provided photographs of Francis and Graves. At that time, no suspect had been arrested.
Graves had been approached by police on a report that he had been loitering in his vehicle near Lake Fayetteville. Knotts showed his picture to Robertson, who denied that Graves was the man who had attacked her. Another officer encountered Francis, who had been reported by his family as a homeless man with mental problems who camped at Lake Fayetteville. Knotts showed Francis's picture to Robertson, and she denied that he was the man who had attacked her. Knotts said that he ended up shredding the photographs and did not mention either man in his reports because he had eliminated them as suspects.
*236 Although Turner asked for additional time to investigate these men, the State argued that this information was not exculpatory. The trial court denied the motion for a continuance, but it stated that defense counsel could question Robertson and Knotts about the photographs and whether any other suspects had been investigated. The trial court found that the State had turned this information over as soon as it became aware of it and that there was no indication that the photographs were exculpatory in any way. At the beginning of trial, Turner renewed his motion for a continuance, which was denied.
The law on this topic is well settled. The prosecution's suppression of evidence favorable to an accused violates the defendant's due-process rights, if the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution. Brady v. Maryland , 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). When the petitioner contends that material evidence was not disclosed to the defense, the petitioner must show that "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Strickler v. Greene , 527 U.S. 263, 280, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999). There are three elements of a true Brady violation: the evidence at issue must be favorable to the accused, either because it is exculpatory or impeaching; the evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued. Id. Impeachment evidence that is material, as well as exculpatory evidence, falls within the Brady rule. Bond v. State , 2015 Ark. 470, 477 S.W.3d 508. The prosecutor has a duty to learn of any favorable information known by others acting on the government's behalf, including the police, Lacy v. State , 2010 Ark. 388, 377 S.W.3d 227, and must disclose the information in sufficient time to permit the defense to make beneficial use of it. Ark. R. Crim. P. 17.1 ; Lee v. State , 340 Ark. 504, 509, 11 S.W.3d 553, 556 (2000). When the prosecutor fails to provide information, the burden is on the defendant to show that the omission was sufficient to undermine confidence in the outcome of the trial. Figueroa v. State , 2016 Ark. App. 30, 480 S.W.3d 888. A defendant, however, is not entitled to simply rely on the State's subpoena or witness list for his own defense; the accused is not entitled to rely on discovery as a substitute for his own investigation. Raquel-Dieguez v. State , 2015 Ark. App. 626, 475 S.W.3d 585 ; Tatum v. State , 2011 Ark. App. 80, 381 S.W.3d 124.
A mistrial is an extreme and drastic remedy that will be resorted to only when there has been an error so prejudicial that justice cannot be served by continuing with the trial or when fundamental fairness of the trial has been manifestly affected. Moore v. State , 355 Ark. 657, 144 S.W.3d 260 (2004). Declaring a mistrial is proper only when the error is beyond repair and cannot be corrected by *237 any curative relief. Brown v. State , 347 Ark. 308, 65 S.W.3d 394 (2001). The judge presiding at trial is in a better position than anyone else to evaluate the impact of any alleged errors. Venable v. State , 260 Ark. 201, 538 S.W.2d 286 (1976). Therefore, the circuit court has wide discretion in granting or denying a motion for mistrial, and the decision of the circuit court will not be reversed except for abuse of that discretion or manifest prejudice to the complaining party. McClinton v. State , 2015 Ark. 245, 464 S.W.3d 913.
Turner argues that this case is controlled by Figueroa , a case in which we reversed and remanded a rape conviction. In that case, the rapist had digitally penetrated the victim's vagina, and the rapist had also penetrated her anus with his penis. The State revealed two days into the jury trial that another man had been identified as a potential suspect; that DNA had been collected from the other suspect; that this man resided near the site of the assault; and that an informant had told police that (1) this man resembled the description of the alleged rapist; (2) this man had admitted to helping rape someone in the same area; (3) this man was partial, nearly exclusively, to anal intercourse; and (4) this man often used the city trail system to navigate to areas close to where the attack occurred. DNA samples from the victim's clothing and from this other suspect were available to test. Figueroa's defense counsel sought but was refused a continuance, which we held was reversible error.
As to the dashboard-camera video, we hold that the trial court did not abuse its discretion in not permitting defense counsel to ask more questions about why the video had not been provided to the defense or in not granting a mistrial for failure to disclose it earlier. The still photographs taken from the video were entered into evidence. Defense counsel was permitted to question Knotts about why and how he came to be in possession of these photographs, what he did with the photographs, why the other suspects were investigated, and how they were eliminated. Turner has failed to demonstrate that the trial court committed an error so prejudicial that justice could not be served by continuing with the trial or that the fundamental fairness of this trial was manifestly affected.
*238 Rule 404(b) of the Arkansas Rules of Evidence provides that evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith, but it may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Thus, there is a general rule excluding evidence of a defendant's prior acts, but the rule also provides an exemplary, but not exhaustive, list of exceptions to that rule. Hamm v. State , 365 Ark. 647, 232 S.W.3d 463 (2006). Evidence is not admissible under Rule 404(b) simply to show a prior bad act. Laswell v. State , 2012 Ark. 201, 404 S.W.3d 818. Rather, the test for admissibility under Rule 404(b) is whether the evidence is independently relevant, which means it must have a tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. Vance v. State , 2011 Ark. 243, 383 S.W.3d 325.
Pursuant to Rule 403 of the Arkansas Rules of Evidence, "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Evidence offered by the State is often likely to be prejudicial to the accused, but the evidence should not be excluded unless the accused can show that it lacks probative value in view of the risk of unfair prejudice. Chunestudy v. State , 2012 Ark. 222, 408 S.W.3d 55.
The admission or rejection of evidence under Rule 404(b) is committed to the sound discretion of the circuit court, and we will not reverse absent a showing of manifest abuse of discretion. Dimas-Martinez v. State , 2011 Ark. 515, 385 S.W.3d 238. Likewise, the balancing mandated by Rule 403 is also a matter left to a circuit court's sound discretion, and an appellate court will not reverse the circuit court's ruling absent a showing of manifest abuse. Croy v. State , 2011 Ark. 284, 383 S.W.3d 367. Abuse of discretion is a high threshold that does not simply require error in the circuit court's decision, but requires that the circuit court act improvidently, thoughtlessly, or without due consideration. Lard v. State , 2014 Ark. 1, 431 S.W.3d 249 ; Craigg v. State , 2012 Ark. 387, 424 S.W.3d 264.
We are not persuaded by Turner's argument that the trial court abused its discretion in this instance. Evidence may be independently relevant if it shows motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake. Smith v. State , 2010 Ark. 75, 364 S.W.3d 443. Evidence that is relevant to explain the act, show a motive, or illustrate the accused's state of mind may be independently relevant and admissible. Lard, supra. A key element that must be proved in every case is that the defendant is the person who committed the crime. Rogers's testimony was relevant to the issues of identification, preparation, and absence of mistake. Rogers's testimony concerned an event close in time, in the same general location, and to a similar person (a woman wearing earbuds and running alone on the trail). Notwithstanding the fact that the testimony may have been prejudicial to Turner, we cannot say that its probative value was substantially outweighed by the danger of unfair prejudice. See Bragg v. State , 328 Ark. 613, 946 S.W.2d 654 (1997).
An attorney should not act as both trial counsel and a material witness because of the appearance of impropriety. Ford v. State , 4 Ark. App. 135, 628 S.W.2d 340 (1982). With regard to criminal prosecutions, a prosecutor cannot serve as an advocate for the State when the prosecutor undertakes an active role in the investigation such that he becomes a potentially material witness either for the State or defense during the trial on the criminal charges. Chelette v. State , 308 Ark. 364, 824 S.W.2d 389 (1992) ; Duncan v. State , 291 Ark. 521, 726 S.W.2d 653 (1987) (abrogated on other grounds in Bryant v. State , 314 Ark. 130, 862 S.W.2d 215 (1993). The issue in this case narrows to a question of whether the trial court abused its discretion in failing to disqualify the entire Washington County Prosecuting Attorney's Office when one deputy prosecuting attorney was to appear as a witness in this criminal trial.
We review a trial court's decision whether to disqualify an attorney under an abuse-of-discretion standard. Echols v. State , 354 Ark. 530, 127 S.W.3d 486 (2003). Abuse of discretion is a high threshold that does not simply require error in the trial court's decision, but requires that the trial court act improvidently, thoughtlessly, or without due consideration. See Grant v. State , 357 Ark. 91, 161 S.W.3d 785 (2004) ; Walker v. State , 304 Ark. 393, 803 S.W.2d 502 (1991).
At the pretrial hearing on Turner's motion, Creed explained that, after having seen a news report the same day of the attack describing the suspect, he called the police to report what he had seen. Creed testified that he had been employed as a deputy prosecutor for Washington County for about two years when he made that phone call. Creed said that later on, after Turner had been arrested, he looked up the mug shot of the suspect, and he thought to himself that this was the guy he had seen.
The trial court recited that it had "spent considerable time studying this motion, the response, and is glad to hear from Mr. Creed today in court." The trial court concluded that the prosecuting attorney's office did not acquire any special knowledge of the case due to Creed's association with the office; Creed had not acted as an active advocate for the State in this case; a specially appointed prosecutor would have no effect on Creed's credibility or the information that the State would glean from him; the defense would have the opportunity to cross-examine Creed to test his credibility and bring out any alleged bias; and there was no appearance of impropriety.
Turner contends that a special prosecutor should have been appointed because an *240 appearance of impropriety remained, and Creed and Stephenson improperly used their access to the prosecutor's resources to strengthen Creed's testimony. We hold that Turner has failed to demonstrate that the trial court abused its discretion in refusing to disqualify the entire Washington County Prosecutor's Office. We recognize that Creed was made aware of the motion to disqualify that specifically named him, and he performed research relative to that issue. Nonetheless, the trial court considered the motion thoroughly, found that Creed had not contaminated the whole prosecutor's office due to his status as a witness, and found that Creed had not created an unfair advantage. Given the deference we must give to the trial court's discretionary decision in this matter, we affirm on this point.
Turner's conviction for kidnapping is affirmed.
Affirmed.
A forensic mental evaluation demonstrated that Turner was fit to stand trial. It was noted that Turner had a history of methamphetamine use.