William Wesley SKIVER *v.* STATE of Arkansas

CR 96–527 983 S.W.2d 931

Supreme Court of Arkansas
Opinion delivered January 14, 1999

*Appellant*, pro se.

*Jon A. Williams*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Vada Berger*, Ass't Att'y Gen., for appellee.

P ER CURIAM. The appellant, William Wesley Skiver, was convicted of aggravated robbery and was sentenced as a habitual offender to life in prison. Pursuant to *Anders v. California*, 386 U.S. 738 (1996), his attorney has filed a motion to withdraw and a brief stating there is no merit to the appeal. Skiver, pursuant to Arkansas Supreme Court Rule 4-3(j), has filed a *pro se* brief in which he raises arguments for reversal of his conviction. The State agrees that there is no merit to the appeal and recommends that Skiver's conviction be affirmed. We conclude that there can be no meritorious issue raised from the rulings that were adverse to Skiver during the trial. Accordingly, we grant the motion to withdraw and affirm Skiver's conviction and sentence.

Skiver's conviction arose from an incident that occurred in a convenience store in Paragould. After threatening the store clerk with a hidden knife, Skiver took the cash from the store's register and several items from the clerk's purse. Two witnesses arrived at the store as Skiver was leaving, and the store clerk was able to alert one of them to what had just occurred. One of the witnesses ascertained the direction Skiver travelled as he left, and the police were alerted. A chase ensued, and Skiver was apprehended after barricading himself in the bedroom of a residence.

On the day of his arrest, Skiver gave a taped statement to Lieutenant Stephenson of the Paragould Police Department. In the statement, Skiver confessed to robbing the convenience store, and he also stated, "I'm going back to the penitentiary." Skiver sought to exclude his reference to the penitentiary from the jury on the basis of relevancy. The Trial Court, finding that the sentence was relevant to show consciousness of guilt, denied Skiver's motion.

*Adverse Rulings*

■ The first adverse ruling that we must discuss is the denial of Skiver's motion for a directed verdict. This court considers arguments on the sufficiency of the evidence prior to the review of trial errors. *Jameson v. State*, 333 Ark. 128, 970 S.W.2d 785 (1998).

At the conclusion of the State's case, Skiver moved for a directed verdict on the basis that the State failed to prove that it was Skiver, and not another person, who robbed the convenience store. Skiver also argued that the State failed to prove that the robbery was committed with a deadly weapon. In the no-merit brief, Skiver's counsel contends that it was proper for the Trial Court to deny his motion for a directed verdict.

■ The test for sufficiency of the evidence on appeal is whether there is substantial evidence to support the verdict. *Lukach v. State*, 310 Ark. 119, 835 S.W.2d 852 (1992). On review, we need only consider evidence that is favorable to the State. *Luckach v. State, supra.*

The first witness to testify for the State was Barbara Wyatt, the convenience-store clerk who was the victim of the aggravated robbery. Ms. Wyatt testified that she was working at the convenience store in the early morning hours of June 17, 1995. At approximately 8:00 a.m., Skiver came into the store and purchased a soda. He then left and stood outside as Ms. Wyatt waited on other customers. Ms. Wyatt testified that when the store was clear of other customers, Skiver came back into the store, threw down a paper bag, and threatened to cut her throat with a knife unless she gave him all of the money in the cash register. After Ms. Wyatt complied, Skiver also emptied the contents of her purse into the paper bag.

Ms. Wyatt also testified that after Skiver took the money from the cash register and her purse, he ordered her into the back room of the convenience store. Ms. Wyatt walked in that direction while Skiver's attention was distracted, but went beyond the back room and into the cooler of the convenience store. After a brief struggle at the door of the cooler, Skiver said he would cut her throat unless she remained there for thirty minutes. Through the glass-windowed doors that formed the front of the cooler, Ms. Wyatt saw Skiver leave the store.

Ms. Wyatt stated that as she watched Skiver leave the store and walk away, she spotted two women drive up to the store. When she saw Skiver round the front corner of the store, Ms. Wyatt ran outside and informed one of the women that she had been robbed. At the conclusion of her testimony, Ms. Wyatt made an in-court identification of Skiver as the man who robbed her.

The two women who drove up to the convenience store at the conclusion of the robbery also testified. The woman who got out of the car, Carol Wickinger, testified that she saw Skiver come out of the store. He was carrying a large brown paper bag in one hand and a beer in the other. Ms. Wickinger stated that shortly afterward, the convenience-store clerk came out of the store, told her she had just been robbed, and asked her not to leave. Ms. Wickinger also made an in-court identification of Skiver as the

person she saw coming out of the convenience store with a large paper bag.

The friend that drove Carol Wickinger to the convenience store, Lisa Porter, also testified. Ms. Porter testified that Ms. Wickinger got out of the car to purchase a newspaper from a rack that was located on the outside of the convenience store. At that time, Ms. Porter said that Skiver walked out of the convenience store, and that he was shortly followed by Ms. Wyatt. Ms. Porter stated that she decided to follow Skiver in her car. She eventually found him shirtless and behind the wheel of a red car. She noted the description of the car and its license plate number, and reported that information to the police. Ms. Porter's testimony also included an in-court identification of Skiver.

The State then introduced the testimony of a series of police officers who participated in the pursuit and apprehension of Skiver. Through the testimony of these officers, the State established that the police encountered Skiver's vehicle, identified him according to Lisa Porter's description, and pursued him at high speeds to the house where he eventually barricaded himself. Skiver, along with his car, the brown paper bag containing money, the items stolen from Ms. Wyatt's purse, and a butcher knife were all recovered from the house and the surrounding area.

The State also introduced Skiver's custodial statement. In his statement, Skiver claimed that he decided to rob the convenience store in order to obtain cash to purchase drugs. He admitted that he was armed with a butcher knife, and that he put the money into a brown paper bag. He also admitted to leaving Ms. Wyatt in the cooler, and to fleeing to the residence where he barricaded himself from police.

■ We think there is substantial evidence that it was Skiver, and not another person, who committed the crime. Three eyewitnesses, including the victim, saw him in the convenience store and immediately thereafter. It was pursuant to the description of one of those eyewitnesses that the police were able to identify Skiver's vehicle and then pursue him to the location where he was eventually apprehended. In our view, this evidence excludes the possibility that another person robbed the convenience store.

■ We also conclude that there was substantial evidence to support the aggravated-robbery conviction. According to Ark. Code Ann. § 5-12-102 (Repl. 1997), a person commits aggravated robbery if he commits a robbery and he is armed with a deadly weapon or represents by word or conduct that he is so armed. Although he never produced the weapon in Ms. Wyatt's view, Skiver did represent that he had a knife and would use it to cut her throat unless she complied with his demands. In his custodial statement, Skiver admitted to having a butcher knife while in the convenience store, and a butcher knife was recovered from the area surrounding the house where he barricaded himself. We believe this is ample evidence to support the aggravated-robbery conviction.

### Hearsay Rulings

During the testimony of Carol Wickinger, the Trial Court overruled Skiver's objection to the introduction of a hearsay statement by the victim, Barbara Wyatt. According to Ms. Wickinger, she arrived at the convenience store in time to see Skiver come out of the store. She testified that he was carrying a brown paper bag in one hand and a beer in the other hand. Ms. Wickinger stated that Skiver was followed shortly thereafter by Barbara Wyatt. When Ms. Wickinger attempted to testify about what Ms. Wyatt said as she came out of the door, however, Skiver objected on the basis of hearsay. After the State argued that the statement was admissible as an excited utterance, the Trial Court overruled the objection and allowed Ms. Wickinger to testify that Ms. Wyatt whispered, "He just robbed me. Don't leave me."

■ Arkansas Evidence Rule 801(c) defines hearsay as a statement, other than one made by the declarant at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Rule 802 provides that hearsay is inadmissible except as provided by law or other rules of evidence. Rule 803(2) provides an exception to the rule against hearsay for "excited utterances." According to the Rule, an excited utterance is a statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." In order to correctly apply this exception, the court must find that

there was a startling event and that at the time the utterance was made the declarant was still under the stress of excitement resulting from that event. *Tackett v. State*, 12 Ark. App. 57, 670 S.W.2d 824 (1984). *Latham v. State*, 318 Ark. 19, 883 S.W.2d 461 (1994).

■ It is evident from Ms. Wickinger's testimony that her arrival at the convenience store was contemporaneous with the conclusion of the robbery. Shortly after Skiver left the store, Ms. Wyatt emerged and stated that Skiver had just robbed her. In these circumstances, it is clear that Ms. Wyatt was still under the stress of the excitement caused by the aggravated robbery, in which she was the victim. Accordingly, the Trial Court correctly overruled Skiver's objection to the introduction of Ms. Wyatt's hearsay statement.

The next series of adverse rulings occurred during the testimony of police officers who responded to the robbery and who pursued and apprehended Skiver. On six occasions, the Trial Court overruled Skiver's hearsay objections to witness reports or radio transmissions received by the officers. In these instances, the Trial Court either ruled that the officer could testify about what he did in response to the information he received, or about the specific contents of the reports in order to explain his subsequent actions. The Trial Court's basis for overruling the hearsay objections was that the statements were not offered for the truth of the matter asserted, but to explain the testifying officer's subsequent actions in the investigation. On three occasions, the Trial Court admonished the jury that the statements were to be considered in that manner.

■ As noted above, "hearsay" is defined as a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. We have examined each of the six adverse rulings, and we conclude that the information the prosecution sought to introduce during the testimony of the police officers was not hearsay because it was not offered for the truth of the matter asserted. Rather, the information was offered to explain the subsequent actions of the police officers in their pursuit and apprehension of Skiver.

The next adverse ruling occurred when the Trial Court sustained the State's objection during Skiver's cross-examination of Officer Jeff Tyner of the Paragould Police Department. Officer Tyner collected evidence from the residence where Skiver had barricaded himself. During cross-examination, Skiver asked Officer Tyner for his opinion as to whether Skiver could have carried some of the items collected from the bedroom into the house without anyone seeing the items. The prosecutor lodged an objection to Skiver's effort to have the officer guess about whether Skiver could conceal the items. The Trial Court sustained the objection.

In the no-merit brief, counsel characterizes the State's objection as an assertion that Officer Tyner lacked the personal knowledge necessary to render an opinion. Counsel further asserts that the Trial Court correctly sustained the objection because Officer Tyner arrived on the scene after Skiver had barricaded himself in the residence, and therefore did not see him carry the items inside. Under these circumstances, counsel contends that Officer Tyner did not have sufficient personal knowledge to testify about whether anyone could have seen Skiver carry the items.

■ ■ The context of Skiver's cross-examination of Officer Tyner suggests that he was requesting the officer's lay opinion, rather than an opinion that required his expertise as a law enforcement officer. Consequently, the propriety of the request for his opinion is governed by Arkansas Evidence Rule 701. The rule provides:

> *Opinion Testimony by lay witnesses.* — If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are
>
> (1) Rationally based on the perception of the witness; and
>
> (2) Helpful to a clear understanding of his testimony or the determination of a fact in issue.

In *Carton v. Missouri Pacific Railroad*, 303 Ark. 568, 798 S.W.2d 674 (1990), we observed that in order to satisfy the first requirement of Rule 701, the testimony must initially pass the personal-knowledge test of A.R.E. Rule 602. We conclude, however, that it was unnecessary for Officer Tyner to see Skiver carry the items

in order to render an opinion about whether he could have concealed them from the view of others. Such an opinion could be given after an observation of the size of the items.

■ We find that the Trial Court correctly sustained the objection because the opinion Skiver sought failed to satisfy the second requirement of Rule 701. We can perceive no reason for seeking Officer Tyner's opinion as to whether the items could be concealed, and no reason was offered when the objection was made. Consequently, we affirm the Trial Court's ruling on this issue.

The next adverse ruling occurred when the Trial Court refused to modify a verdict form in order to comply with a jury instruction for aggravated robbery. The instruction gave the jury a choice of three alternatives when deciding Skiver's guilt or innocence on the charge of aggravated robbery. The alternatives were that they could find Skiver guilty of the offense with "the use" of a deadly weapon, guilty of the offense without "the use" of a deadly weapon, or not guilty. The alternatives on the verdict form that corresponded to the instruction, however, substituted Skiver's alleged "use" of a deadly weapon with his being "armed with" a deadly weapon. We conclude that Skiver was not prejudiced by the Trial Court's refusal to modify the verdict form.

■ The appearance of the word "use" in the aggravated-robbery instruction does not comply with the statutory language, which provides that a person commits aggravated robbery if he commits a robbery and he is armed with a deadly weapon or represents by word or conduct that he is so armed. Ark. Code Ann. § 5-12-103 (Repl. 1997). Even so, we see little difference between the effect of "used" and "armed with" a weapon. The focus of the crime of aggravated robbery is the threat of harm to the victim. *Wheat v. State*, 297 Ark. 502, 763 S.W.2d 79 (1989). To the extent that Skiver represented to Ms. Wyatt that he was armed with a knife and would use it to cut her throat unless she complied with his demands, he "used" the knife to perpetrate the aggravated robbery. Accordingly, we can perceive of no prejudice that Skiver could have suffered as a result of the Trial Court's refusal to modify the verdict form.

The next adverse ruling occurred when the Trial Court, over Skiver's objection, allowed the State to amend the information to charge Skiver as a habitual offender. After the jury retired to consider Skiver's sentence on the aggravated-robbery conviction, the Trial Court made the following record of Skiver's objection to the amendment of the information to charge him as a habitual offender:

> We need to put on the record that the State, that they were seeking enhanced punishment as a result of the defendant being a habitual offender.

> This took place in chambers. Mr. Williams asserted his objection in a timely manner, and the Court recognizes the amendment on the date of trial to allege the defendant an habitual offender. He did find that the prosecuting attorney made the prior convictions available to defense counsel as soon as they had them. The Court felt that it would not be appropriate to instruct the jury in that regard.

 It is well settled that the State may amend an information up to a point after the jury has been sworn but before the case has been submitted to it, as long as the amendment does not change the nature or degree of the crime charged and the defendant is not surprised. *Kilgore v. State*, 313 Ark. 198, 852 S.W.2d 810 (1993). The Trial Court recognizes the amendment "on the date of trial," which indicates that the information was amended to include the habitual-offender allegation before the two-day trial began. Furthermore, an amendment that adds an allegation that the defendant is a habitual offender does not change either the nature or the degree of the crime. It simply authorizes a more severe punishment. *Finch v. State*, 262 Ark. 313, 556 S.W.2d 434 (1977). Lastly, the record indicates that Skiver cannot claim surprise because defense counsel was made aware of the prior convictions that the State intended to introduce during the sentencing phase.

The next adverse ruling occurred when the Trial Court overruled Skiver's objection to the introduction of evidence of his attempt to escape from jail two weeks before the trial. The evidence was introduced during the sentencing phase of the trial.

In the absence of prejudice, Arkansas law permits the introduction of "additional evidence relevant to sentencing." Ark. Code Ann. § 16-97-101(2) (Supp. 1997); *Hill v. State*, 318 Ark. 408, 887 S.W.2d 275 (1994). Moreover, a trial court has wide discretion in admitting evidence of other crimes or wrongs, and its decision will not be reversed absent an abuse of discretion. *Cupit v. State*, 324 Ark. 438, 920 S.W.2d 852 (1996); *McClish v. State*, 331 Ark. 295 962 S.W.2d 332 (1998).

We perceive no abuse of discretion in the Trial Court's decision to allow the State to introduce evidence of Skiver's attempted escape in the sentencing phase of the trial. A criminal defendant's proclivity for escape is a pertinent factor in a jury's sentencing decision. Accordingly, we conclude that the Trial Court correctly determined that the probative value of the evidence of the attempted escape substantially outweighed the danger of unfair prejudice.

The last adverse ruling concerns the custodial statement that Skiver gave to the police. Skiver sought to have three of his remarks in the statement excluded because he believed they were irrelevant. The Trial Court agreed to excise two of the remarks from the statement, but concluded that Skiver's remark that he was "going back to the penitentiary," should remain in the statement. According to the Trial Court, that statement was relevant to show a consciousness of guilt. Although Skiver did not object on the basis of Rule 403, the Trial Court further decided that the probative value of the remark was not substantially outweighed by the danger of unfair prejudice.

A trial court is accorded wide discretion in evidentiary rulings and will not be reversed on such rulings absent a manifest abuse of discretion. *Misskelley v. State,* 323 Ark. 449, 915 S.W.2d 702 (1996). A trial court's ruling on relevancy is entitled to great weight and will not be reversed absent an abuse of discretion. *Misskelley, supra; Dixon v. State,* 311 Ark. 613, 846 S.W.2d 170 (1993).

We conclude that the Trial Court's ruling does not constitute reversible error. Skiver's reference to "going back to the penitentiary" could be considered evidence of a prior bad act,

which must have relevance independent of proving that the defendant is of bad character. We have recognized that when evidence of prior bad acts reflects a consciousness of guilt, it has independent relevance under A.R.E. Rule 404(b). *See generally, Henderson v. State*, 322 Ark. 402, 910 S.W.2d 656 (1995). Once independent relevancy is established, the trial court is then obliged to scrutinize the evidence under A.R.E. Rule 403. *Price v. State*, 268 Ark. 535, 597 S.W.2d 598 (1980). That Rule provides that relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice.

■ According to our examination of the ample evidence that was introduced against Skiver, his reference to "going back to the penitentiary" had little probative value as consciousness of guilt. We also find, however, that the substantial evidence that was introduced, including direct evidence from eyewitnesses, warrants a conclusion that the danger of unfair prejudice did not "substantially outweigh" the probative value of the evidence. In other words, any error the Trial Court made in its determination of the probative value of the evidence was harmless. *Abernathy v. State*, 325 Ark. 61, 925 S.W.2d 380 (1996). Accordingly, we must affirm.

### Skiver's pro se *arguments*

■ Skiver has filed a *pro se* brief in which he raises several additional points on appeal. We decline to reach the merits of these arguments, however, because they are composed only of conclusory statements and contain no supporting legal authority. Conclusory arguments, without supporting authority, will not be considered. *Collins v. State*, 308 Ark. 536, 826 S.W.2d 231 (1992); *Cox v. State*, 305 Ark. 244, 808 S.W.2d 306 (1991).

### Compliance with Rule 4-3(h)

The record has been reviewed in accordance with Arkansas Supreme Court Rule 4-3(h), and as set out above, it has been determined that there were no errors with respect to rulings adverse to the appellant.

Affirmed.