2009 Ark. 483

**Kevin BANKS, Appellant,**

v.

**STATE of Arkansas, Appellee.**

**No. CR 09–95.**

Supreme Court of Arkansas.

Oct. 8, 2009.

Lea Ellen Fowler, North Little Rock, for appellant.

Dustin McDaniel, Att'y Gen., by: Jake H. Jones, Ass't Att'y Gen., for appellee.

JIM GUNTER, Justice.

Appellant was convicted of first-degree murder and given a sentence of life imprisonment. He now appeals his conviction, asserting that the trial court erred in allowing certain testimony under Ark. R. Evid. 404(b) (2009). Because this is a criminal appeal in which life imprisonment has been imposed, this court has jurisdiction under Ark. Sup.Ct. R. 1–2(a)(2). We affirm.

Appellant was charged with first-degree murder in connection with the death of Brent Pettus, who was found shot in his car on December 20, 2007. Prior to trial, the State filed notice of its intent to use evidence, pursuant to Rule 404(b), of the attempted murder of one State witness, Antoine Jones; the murder of one State witness, Thomas Okafor; and the murder of Jones's child, Kamya Weathersby. Appellant filed a response objecting to such evidence, but the issue was not argued to the court until immediately prior to trial.

At the bench trial, held November 6, 2008, the State explained that it would be offering the testimony of Jones, who was contacted by appellant after a visit to the Pettus family to offer condolences. Appellant confessed to the murder of Pettus to Jones and asked Jones what information he had given to the Pettus family. Shortly after seeing appellant again a couple of days later at a wake for Pettus, Jones's house was shot at, and his daughter Kamya was killed in the shooting. Jones was shot at again in May 2008, and the State asserted there was evidence, in the form of testimony from Freddie Walls, appellant's cellmate at the county jail, that appellant had ordered that shooting. The State argued that it would introduce this evidence under Rule 404(b) to show consciousness of guilt on the part of appellant. The State also sought to introduce evidence concerning the murder of Thomas Okafor, who was an eyewitness to the murder of Pettus and had given information to the police. The State asserted it would offer evidence, again from Walls, that appellant had ordered the murder of Okafor, which again would show consciousness of guilt under Rule 404(b).

Appellant argued that the evidence the State sought to introduce was not relevant; did not prove motive, intent, or consciousness of guilt; and was merely being offered as a means to prejudice the finder of fact and show that appellant was of bad character. Appellant also argued that any possible relevance would be outweighed by the prejudicial effect of the evidence. Appellant argued that he was imprisoned during the time Okafor was killed and the second time Jones was shot at and that he had no motive to shoot either man because they had offered no substantial evidence to the police. The court asked the State if it considered the statement made by appellant to his cellmate as an admission, and the State answered in the affirmative. The court stated that it believed that the statement was relevant and would be admitted.

Once the trial commenced, Walls testified that he got to know appellant while they were cellmates at the Pulaski County jail. He testified that appellant mentioned a man named "Pond" whose real name was Brent Pettus. Appellant told Walls that,

on the day of the murder, Pettus had sold him some weed earlier that day and his "sack was kind of short." He met Pettus to confront him about the shortage and shot Pettus in the stomach. Appellant said he had shot Pettus because he "really didn't like him too much" and because Pettus had testified against appellant's cousin in another case. Appellant also told Walls that he was worried about a witness named Gregory, that he was going to "get him handled," and told him about another witness who "got burnt up." According to appellant, the witness had been shot in the head by appellant's brothers, Ricky and Marcus, and the witness's car was set on fire and abandoned in Interstate Park.

Antoine Jones testified that Brent Pettus's nickname was "Pond" and that he was a friend of the family. Jones also testified that he had previously met appellant and his brothers, Ricky and Marcus. After learning that Pettus had been shot, Jones visited the Pettus family to offer his condolences. After visiting the Pettuses, Jones received a phone call from appellant who asked Jones to meet him. At that meeting, appellant indicated to Jones that he had been involved in the murder and asked if the Pettus family knew who had killed Pettus. Several nights later, Jones saw appellant at a nightclub, and appellant told him that "goons are lurking," which, according to Jones, meant a gangster was lurking or watching him. Jones went home and his house was shot at shortly thereafter.

At this point in Jones's testimony, appellant again objected that it was not relevant to Brent Pettus's murder and any relevance was outweighed by its prejudicial effect. The State argued that it showed Jones's motivation for not cooperating with the police initially and showed appellant's consciousness of guilt. The court overruled the objection and allowed the State to introduce photographs of Jones's home after it had been shot.

The State then asked Jones if his little girl had been killed in the shooting, and appellant again objected, but the court overruled the objection. Jones testified that his daughter Kamya had been killed and that he did not tell the police anything at first because he planned to kill appellant himself. Jones testified that he did purchase a gun, but after being shot at again on May 22, 2008, he decided to cooperate with the police.

Gregory Williams testified that he grew up with appellant in the same neighborhood. On the night of the murder, Williams was sitting in his car when he saw appellant, who asked Williams to take him to get some weed. Williams declined, and appellant walked away. A short time later, Williams heard gunshots, and as he drove toward where he had heard the shots come from, appellant stopped him and got in his car. Williams stated that appellant had a gun in his waistband. Williams said he drove appellant a short distance and then appellant got out. Later that night, Williams was stopped by the police and questioned about the murder, and his car was impounded. Williams saw appellant the next day, and appellant told him he "got into it with somebody and had to shoot them." The day after that, Williams talked to appellant on the phone, and appellant told him that he had shot Pond.

Detective Tommy Hudson with the Little Rock Police Department testified that he was involved in the Pettus investigation and was familiar with the homicide of Thomas Okafor. Appellant again objected that this testimony was not relevant and that any probative value was outweighed by its prejudicial effect, because appellant was incarcerated at the time Okafor was killed. The State contended that the Oka-

for homicide was a continuation of the Pettus case, or, in the alternative, that evidence of the Okafor homicide was relevant under 404(b) to show consciousness of guilt. The court again overruled the objection. Detective Hudson continued his testimony and explained that Okafor had been shot in the head, his car was burned, and the body was found in the car at Interstate Park. Okafor had been interviewed in the Brent Pettus case and told police that he had seen somebody who looked like appellant.

At the close of all the evidence, the trial court, sitting as the finder of fact, found appellant guilty of first-degree murder and sentenced him to life imprisonment, plus a ten-year enhancement for employing a firearm in commission of a felony, to run consecutively. Judgment was entered on November 14, 2008, and a timely notice of appeal was filed on November 24, 2008.

■ On appeal, appellant argues that the trial court erred in allowing, under Rule 404(b), the testimony of Antoine Jones and Freddie Walls. Rule 404(b) of the Arkansas Rules of Evidence provides:

(b) Other Crimes, Wrongs, or Acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

This court has noted that the list of exceptions expressed by 404(b) is not an exclusive list, but rather is exemplary of the purposes for which otherwise inadmissible evidence of other crimes, wrongs, or acts would be admissible. *Eliott v. State*, 342 Ark. 237, 27 S.W.3d 432 (2000). Such evidence must, however, be independently relevant under Rule 404(b), and the proba-

tive value of the evidence must outweigh any danger of unfair prejudice in accordance with Rule 403. *Id.* Another crime is "independently relevant" if it tends to prove a material point and is not introduced merely to demonstrate that the defendant is a criminal. *Id.* When evidence of a prior crime reflects a consciousness of guilt, it is independently relevant and admissible under Rule 404(b). *Id.* The admission or rejection of evidence under Rule 404(b) is left to the sound discretion of the trial court and will not be disturbed on appeal absent a manifest abuse of discretion. *Id.* We also note that in cases tried without a jury there is a presumption that a trial judge will consider only competent evidence. *Harmon v. State*, 340 Ark. 18, 8 S.W.3d 472 (2000). This presumption is overcome only when there is an indication that the trial judge gave some consideration to the inadmissible evidence. *Id.*

■ With regard to Antoine Jones, appellant asserts that the sole purpose of his testimony was to cause the trier of fact to consider the murder of Jones's daughter, Kamya, as evidence of appellant's guilt in the murder of Brent Pettus. But, argues appellant, there was no other evidence presented by the State connecting appellant to Kamya's murder, and "[f]or the trial court to find Mr. Jones' [sic] testimony sufficient to connect the terrible crime of the murder of Kmaya [sic] Weathersby to the murder of Brent Pettus and therefore admissible under Rule 404(b) is a manifest abuse of discretion." According to appellant, the unfair prejudice of connecting him to the murder of Kamya far outweighed any probative value of Jones's testimony.

The State counters that Jones's testimony was not offered to show that appellant was a bad person, but was instead offered for the independent and relevant purpose of showing appellant's consciousness of guilt. This court has previously held that

evidence showing an attempt to silence a witness is independently relevant to prove the crime charged, *Rohrbach v. State*, 374 Ark. 271, 287 S.W.3d 590 (2008), and efforts to conceal evidence demonstrate a consciousness of guilt and are therefore admissible, *Holman v. State*, 372 Ark. 2, 269 S.W.3d 815 (2007) (quoting *Mendiola v. State*, 92 Ark. App. 359, 362, 214 S.W.3d 271, 274 (2005)). The State notes that Jones's testimony regarding his daughter's death was also relevant to explain why Jones had not initially cooperated with the police. Given our case law on this issue, we find that Jones's testimony was independently relevant to show appellant's consciousness of guilt, and thus, the trial court did not abuse its discretion in allowing Jones's testimony.

Appellant also argues that the court erred in allowing the testimony of Freddie Walls, because the sole purpose of his testimony was to cause the trier of fact to consider the murder of Thomas Okafor as evidence of appellant's guilt in the murder of Brent Pettus. However, no other evidence was presented by the State connecting appellant to Okafor's murder, and again, the prejudice of connecting appellant to the murder of Okafor far outweighed any probative value of Walls's testimony. Appellant also takes issue with the State's theory of appellant's motive for wanting Okafor dead, because the only information Okafor had was that he had seen someone who looked like appellant, and there were other witnesses who possessed more incriminating information than that.

In response, the State first asserts that appellant's argument is not preserved because he failed to make a contemporaneous objection to Walls's testimony at trial. However, this would be true only if the trial court's pretrial ruling was conditional, as was the case in *Ward v. State*, 370 Ark. 398, 260 S.W.3d 292 (2007), which is cited by the State. But when an objection made in the form of a motion in limine has been overruled by the court, a contemporaneous objection at trial is not required. *See Kidd v. State*, 330 Ark. 479, 955 S.W.2d 505 (1997). Therefore, we find that appellant's argument is preserved for this court's review.

On the merits, the State once again asserts that Walls's testimony was offered to show appellant's consciousness of guilt, as it demonstrated that appellant "coordinated with his brothers to do away with one witness [Okafor] who might testify against him . . . and was contemplating having them do away with another [Williams]." Again, based on this court's case law cited above, we find that the trial court did not abuse its discretion in finding Walls's testimony independently relevant and allowing his testimony.

Pursuant to Ark. Sup.Ct. R. 4–3(i), the record has been examined for all objections, motions, and requests made by either party that were decided adversely to appellant, and no prejudicial error has been found. *Tillman v. State*, 364 Ark. 143, 217 S.W.3d 773 (2005).

Affirmed.

HANNAH, C.J., and DANIELSON, J., concur.

JIM HANNAH, Chief Justice, concurring.

I concur in the majority's decision that this case should be affirmed. However, I write separately because I differ in my analysis on admission of the evidence under Arkansas Rule of Evidence 404(b). At issue is evidence that Banks ordered the shooting of Antoine Jones's home (that resulted in the death of Kamya Weathersby and Banks being charged with her mur-

der in separate proceedings), the intimidation and assault of witnesses such as Jones, and the murder of Thomas Okafor. The State argued that these acts were admissible as acts proving the charged murder of Brent Pettus because they revealed a guilty conscience. Banks argued that the evidence was inadmissible because it revealed other crimes, wrongs, or acts in violation of Arkansas Rule of Evidence 404(b).

I note first that the majority holds that the evidence fits an exception to Rule 404(b). The word "exception" does not appear in Rule 404(b). There can be no exceptions to Rule 404(b) because Rule 404(b) is a rule of relevance. Evidence offered under Rule 404(b) "must be independently relevant." *Allen v. State,* 374 Ark. 309, 316, 287 S.W.3d 579, 584 (2008). If an exception is granted, it is an exception to the requirement of relevance. To admit irrelevant evidence offends due process and means criminal convictions are based on proof less than proof beyond a reasonable doubt.[1]

Rule 404(b) is a codification of the common law rule that existed in Arkansas at the time the Rule was adopted. *Price v. State,* 267 Ark. 1172, 1175, 599 S.W.2d 394, 396 (Ark.App.1980). The relevant common law rule was that evidence that reveals that the defendant is guilty of other crimes, wrongs, or acts is not necessarily inadmissible when it, independent of revealing the other crimes, wrongs, or acts, constitutes competent evidence to prove the charged crime. *See Alford v. State,* 223 Ark. 330, 334, 266 S.W.2d 804, 806

(1954); *State v. Dulaney,* 87 Ark. 17, 23, 112 S.W. 158, 160 (1908). This court in *Dulaney* stated that, while the principle is often spoken of as an exception, "it is not an exception," because, as just noted, the evidence is not admitted to prove the charged crime based on the commission of another crime, but because the evidence is admissible to prove the charged crime despite revealing another crime. *Dulaney,* 87 Ark. at 22–23, 112 S.W. at 160; *See also Alford,* 223 Ark. at 335, 266 S.W.2d at 806 ("Instances of admissibility are not really exceptions to the exclusionary principle."). However, the idea of an exception has been reintroduced in Arkansas precedent from time to time. In *Satterfield v. State,* 245 Ark. 337, 341–42, 432 S.W.2d 472, 474 (1968), the court inadvertently reintroduced the term in quoting language from 22A Corpus Juris Secundum, *Criminal Law* § 682 (1961) rather than relying on existing precedent. The term reappears in our precedent sporadically but has been used more consistently since it was inadvertently reintroduced in a concurring opinion in *Benedetti v. State,* 268 Ark. 571, 575, 594 S.W.2d 61, 63 (1980) (Newbern, J., concurring). Referring to exceptions to Rule 404(b) is error and only confuses an already troublesome area of the law.

I must next note that the majority errs in stating that "[a]nother crime is 'independently relevant' if it tends to prove a material point and is not introduced merely to demonstrate that the defendant is a criminal."[2] "Another crime," as a crime, is not independently relevant to prove a charged crime. For many years this court

---

1. A finding of guilt must rest upon proof, beyond a reasonable doubt, that the accused committed the exact offense for which he is being tried. *Leaks v. State,* 339 Ark. 348, 358, 5 S.W.3d 448, 454 (1999) (quoting *Simmons v. State,* 233 Ark. 616, 619, 346 S.W.2d 197, 199 (1961)) (quoting *Alford v. State,* 223 Ark. 330, 334, 266 S.W.2d 804, 806 (1954)).

2. The phrase "another crime is independently relevant" appears in two prior majority opinions of this court. *Henderson v. State,* 360 Ark. 356, 361, 201 S.W.3d 401, 405 (2005); *Eliott v. State,* 342 Ark. 237, 240, 27 S.W.3d 432, 435 (2000).

has recognized that a fundamental rule of exclusion forbids the prosecution from proving the commission of one crime by proof of the commission of another crime. *Hickey v. State*, 263 Ark. 809, 810, 569 S.W.2d 64, 64 (1978) (*quoting Alford*, 223 Ark. at 333, 266 S.W.2d at 806).[3] Rule 404(b) does not permit admission of other crimes to prove a charged crime. Rule 404(b) permits admission of evidence, where that evidence, entirely independent from revealing a separate crime, wrong, or act, constitutes evidence relevant to prove the charged crime. In other words, even if the conduct at issue did not reveal a separate crime, it would still constitute evidence relevant to prove the charged crime. The principle is simply that evidence relevant to prove the charged crime is not necessarily excluded because it also incidentally reveals the commission of another crime, wrong, or act. *See Umbaugh v. State*, 250 Ark. 50, 55, 463 S.W.2d 634, 636 (1971) (quoting *Dulaney*, 87 Ark. at 23, 112 S.W. at 160). Thus, stating that another "crime" is relevant misstates the law.

Finally, I conclude that the evidence was properly admitted under Rule 404(b). The evidence that Banks ordered the shooting, the witness intimidation, and the murder of Okafor to silence witnesses to the charged murder of Pettus constitutes independently relevant evidence proving that Smith murdered Pettus. Tampering with witnesses to thwart prosecution for the charged crime reveals consciousness of guilt and constitutes evidence relevant to prove the charged crime. *See Henderson v. State*, 322 Ark. 402, 408, 910 S.W.2d 656, 658 (1995). Thus, while the evidence at issue may or may not reveal the commission of separate and distinct crimes from the charged murder, it constitutes proof of the charged murder.[4] It is, therefore, independent of revealing other crimes, wrongs, or acts, relevant proof of the charged crime, the murder of Pettus. "[T]he fact that evidence shows that the defendant was guilty of another crime does not prevent it being admissible when otherwise it would be competent on the issue under trial." *Umbaugh v. State*, 250 Ark. at 55, 463 S.W.2d at 636 (quoting *Dulaney*, 87 Ark. at 23, 112 S.W. at 160).

Thus, the evidence was independently relevant under Rule 404(b), and "[o]nce independent relevancy is established, the trial court is then obliged to scrutinize the evidence under A.R.E. Rule 403." *Skiver v. State*, 336 Ark. 86, 100, 983 S.W.2d 931, 938 (1999). Because the evidence at issue constitutes proof Banks committed the charged murder of Pettus, it is relevant and, because its probative value outweighs the prejudicial harm, it was properly admitted.

DANIELSON, J., joins.

---

3. Rule 404(b) was in force at the time that *Hickey v. State*, 263 Ark. 809, 569 S.W.2d 64 (1978), was decided. The uniform rules of evidence were adopted by the General Assembly in 1976, and the adoption was declared void by the Arkansas Supreme Court in *Ricarte v. State*, 290 Ark. 100, 717 S.W.2d 488 (1986). In *Ricarte*, the court adopted the rules as court rules. Rule 404(b) has remained the same since it was adopted by the General Assembly in 1976.

4. If the State introduced the evidence of other crimes to prove that Banks was a criminal, and that because he was a criminal, it was more rather than less likely that he murdered Pettus, it would be inadmissible under Rule 404(b). *See, e.g., Green v. State*, 365 Ark. 478, 494, 231 S.W.3d 638, 651 (2006) (stating that other unrelated crimes, wrongs, or acts are inadmissible to prove a defendant is a man of bad character and addicted to crime).