2010 Ark. 75

**Ricky Dale SMITH, Appellant,**

v.

**STATE of Arkansas, Appellee.**

**No. CR 09–930.**

Supreme Court of Arkansas.

Feb. 18, 2010.

Lea Ellen Fowler, North Little Rock, for appellant.

Dustin McDaniel, Att'y Gen., by Brad Newman, Ass't Att'y Gen., for appellee.

JIM GUNTER, Justice.

Appellant Ricky Dale Smith was convicted of capital murder in violation of Ark.Code Ann. § 5–10–101 (Supp.2009), for which he was sentenced to life in prison without the possibility of parole, and four counts of committing a terroristic act in violation of Ark.Code Ann. § 5–13–310 (Supp.2009), for which he was sentenced to fifty years' imprisonment on each count, all sentences to run concurrent. Our jurisdiction is pursuant to Rule 1–2(a)(2) of the Rules of the Arkansas Supreme Court. Appellant asserts two points on appeal: (1) that the trial court abused its discretion in allowing into evidence testimony regarding two subsequent aggravated robberies in which appellant was an alleged participant, and (2) that the trial court abused its discretion in allowing evidence of a subsequent attempted homicide in which appellant was implicated. We affirm on both points.

Appellant is one of three defendants, along with Kevin Banks and Marcus Smith, who were charged with the December 2007 drive-by home shooting that resulted in the death of six-year-old Kamya Weathersby. The home on Martin Luther King Boulevard in Little Rock was shot at forty-eight times, and seven of those shots hit Kamya, who at the time of the shooting was in her bed. As a result of her injuries, Kamya died the next day. The State's theory of the case was that Antoine Jones, who lived in the house with Kamya's mother, was the intended victim due to his knowledge regarding an earlier murder committed by Banks. At the time of the shooting, Antoine was present in the house as well as Kamya's mother, LaShandra Washington, and her two other daughters, Aries Jones and Jasriea Vick.

Prior to trial, the State filed notice of its intention to introduce evidence under Ark. R. Evid. 404(b) relating to two subsequent aggravated robberies, one in Little Rock and one in North Little Rock, in which appellant was an alleged participant and a

separate drive-by shooting incident that occurred five months after Kamya's death in which appellant allegedly fired several rounds at the surviving victims as they were exiting their vehicle. Appellant filed an objection to the State's intention to admit this additional evidence. The court held a hearing and ruled that the State's witnesses could refer to appellant's alleged participation in the subsequent robberies to provide a foundation for the relationship between that witness and appellant to explain why appellant would confess to murder. The court noted that the State was not to go into detail regarding the robberies.

Appellant's trial began on January 12, 2009. During the State's opening statement, appellant renewed his objection to the admissibility of any evidence regarding the subsequent ⌊3drive-by shooting. The court overruled the objection but noted it as a continuing. Thereafter, Washington and Jones testified that on May 12, 2008, they along with their infant daughter drove to their apartment in North Little Rock. Upon exiting their vehicle, they were fired upon numerous times, causing extensive damage to the vehicle. Neither Washington nor Jones saw the shooters.

Janice Brock, who lived nearby, testified that she took her dog out to check her mail when she heard shots and saw a car coming from the direction of the sound. Even though it was dark, the car did not have its lights on, and it almost hit her dog. She jumped in her vehicle and followed the car but lost sight of it when it ran a stop sign. When she arrived at the intersection of 47th Street and Pike, she saw that the car she had been pursuing had hit another car. The only person at the scene was the driver of the other vehicle.

Rozeline Jenkins testified that she lived at the intersection of 47th Street and Pike and that she ran out onto her front porch when she heard a crash. She stated that she saw a woman driving one car and a man exiting another car. The man was carrying a long rifle similar to one she had seen in a military training video. The man ran into her yard before running off into a different direction. Jenkins testified that the man was wearing dark clothing and had something tied around his head. Jenkins called the police, and eventually gave a statement. She was shown a photo lineup, and she indicated appellant as the perpetrator.

Over objections from appellant, the trial court also allowed fourteen-year-old Larry Taylor to testify that on May 19, 2008, several months after the drive-by shooting that killed ⌊4Kamya, he and appellant robbed two gas stations. Taylor stated that he had become associated with appellant prior to the robberies and that appellant warned him of an ongoing "beef" with Antoine Jones. Taylor testified that appellant admitted he had tried to kill Jones in December 2007 but had killed Kamya instead. According to Taylor, appellant stated that he and his brothers had been watching the house for a week prior to the shooting. Taylor also testified that appellant described a separate attempt to kill Jones where after shooting at him, appellant drove away from the scene, wrecked the car, and fled on foot.

During the investigation of the drive-by shooting and car crash, the following evidence was revealed: the abandoned car at the crash scene was a maroon Nissan Maxima owned by appellant's father; an inventory search of the Maxima produced a .45–caliber pistol, a clip, and a leather holster; spent .45–caliber casings and sixteen 7.62–by–39 millimeter casings were found at the North Little Rock drive-by scene; ballistics established that the 7.62 casings found at the North Little Rock crime scene were shot from the same weapon that had fired

the 7.62 casings found at the Little Rock murder scene; the Maxima's airbags had deployed, and scientific testing established that appellant's DNA was found on the driver's side airbag; and paperwork in appellant's name was found in the front seat of the Maxima. Law enforcement also searched appellant's home and found one nine-millimeter live round, five 7.62–by–39 live rounds, and an empty 7.62 ammunition box in appellant's bedroom.

Appellant makes two arguments on appeal, both of which rely on Rule 404(b). The admission or rejection of evidence under Rule 404(b) is committed to the sound discretion of the circuit court, which this court will not disturb on appeal absent a showing of manifest abuse. *Kelley v. State*, 2009 Ark. 389, 327 S.W.3d 373. Rule 404(b) provides that

> [e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Ark. R. Evid. 404(b) (2009). Evidence offered under Rule 404(b) must be independently relevant to make the existence of any fact of consequence more or less probable than it would be without the evidence. *Kelley, supra*. In other words, the prior bad act must be independently relevant to the main issue, in that it tends to prove some material point rather than merely proving that the defendant is a criminal. *Id.* Evidence may be independently relevant if it shows motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake. *See Bragg v. State*, 328 Ark. 613, 946 S.W.2d 654 (1997). Evidence admitted pursuant to 404(b) must prove to not be too separated in time,

making the evidence unduly remote. *Nelson v. State*, 365 Ark. 314, 229 S.W.3d 35 (2006). The trial judge is given sound discretion over the matter of remoteness, and will be overturned only when it is clear that the questioned evidence has no connection with any issue in the case. *Id.*

In addition, we have held that evidence may be relevant in connection with other facts to form a link in the chain of evidence necessary to support a party's contention. *Barrett v. State*, 354 Ark. 187, 119 S.W.3d 485 (2003). Furthermore, testimony can be relevant if it provides the necessary context for other evidence. *Gaines v. State*, 340 Ark. 99, 8 S.W.3d 547 (2000). However, it is important to note that even relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. Ark. R. Evid. 403 (2009).

For his first point on appeal, appellant maintains that the circuit court abused its discretion in allowing Larry Taylor to testify that he and appellant committed two aggravated robberies several months after the murder of Kamya Weathersby. Appellant contends that the evidence was not proper under Rule 404(b) because its only purpose was to show that appellant was a criminal and more than likely to have been involved in Kamya's murder; that the testimony was not independently relevant; and that the danger of unfair prejudice outweighed any probative value of the testimony. The State responds, noting that appellant does not challenge allowing Taylor to testify regarding the confession appellant allegedly made but only Taylor's reference to appellant's alleged participation in the two robberies. The State asserts that Taylor's testimony about the robberies was relevant and necessary to explain why appellant would confide in Taylor about the shooting that re-

sulted in Kamya's death; that Taylor's testimony was admissible under Rule 404(b) to show appellant's motive, opportunity, intent, preparation, plan, knowledge, and identity with regard to the shooting of Kamya; and that the testimony was relevant to establish context for Taylor's statements.

Taylor's testimony provided details corroborating other evidence that was presented at the trial, including that appellant and his brothers were trying to kill Jones. Moreover, Taylor testified that appellant confessed to his participation in the killing of Kamya. That confession is independently relevant to prove appellant's involvement in the murder of Kamya. Per the court's instruction, Taylor did not go into detail regarding the two subsequent robberies, but mentioned them to provide context for the jury as to his connection with appellant and a basis for why appellant would trust Taylor enough to confide in him. Once Taylor explained his connection to appellant, Taylor's testimony provided corroboration of appellant's involvement in the shooting of Kamya and second attempt to murder Jones. Therefore, we are satisfied that the circuit court did not abuse its discretion in finding that Taylor's testimony regarding the robberies was relevant and admissible under Rule 404(b). Appellant also makes a cursory argument that the evidence should have been excluded because its prejudicial effect outweighed its probative value. This argument is not developed, and we will not consider arguments not supported by legal authority or convincing argument. *Williams v. State*, 371 Ark. 550, 268 S.W.3d 868 (2007).

Similar to his first argument, appellant contends in his second point on appeal that the trial court abused its discretion in allowing testimony regarding the separate shooting incident involving LaShandra Washington and Antoine Jones in May 2008. Appellant maintains that this evidence was not admissible under Rule 404(b) because the State could not prove beyond a reasonable doubt that appellant was involved in the subsequent shooting. Appellant focuses on the circumstantial nature of the evidence substantiating his involvement in the second shooting. The State asserts that evidence that appellant was involved in a subsequent attempt to kill Jones was relevant under Rule 404(b) to show motive, intent, knowledge, and absence of mistake with regard to the shooting of Kamya. The State points to the repeated attempts to kill Jones as corroboration of Taylor's testimony that appellant and Jones were "beefing."

The evidence the State presented establishing appellant's alleged participation in a second murder attempt on Jones was clearly independently relevant to show motive, opportunity, intent, and absence of mistake with regard to the shooting that killed Kamya. Appellant's repeated attempt to kill Jones corroborated the testimony of both Jones and Taylor that appellant was in a "beef" with Jones and wanted to kill him. The State's evidence regarding appellant's participation in the subsequent shooting included DNA evidence and an eyewitness identification. Appellant's argument on appeal addresses the weight of the evidence rather than its relevancy. However, the jury alone determines what weight to give evidence and may reject it or accept all or any part of it that the jurors believe to be true. *Jackson v. State*, 2009 Ark. 336, 321 S.W.3d 260. We will not weigh matters of credibility, and we are convinced that the circuit court did not abuse its discretion in allowing evidence of the subsequent shooting under Rule 404(b). Finally, appellant makes another superficial argument that

the evidence should have been excluded because its prejudicial effect outweighed its probative value. This argument is not developed, and we will not consider arguments not supported by legal authority or convincing argument. *Williams, supra.*

Pursuant to Ark. Sup.Ct. R. 4–3(i), the record has been examined for all objections, motions, and requests made by either party that were decided adversely to appellant, and no prejudicial error has been found. *Tillman v. State,* 364 Ark. 143, 217 S.W.3d 773 (2005).

Affirmed.

HANNAH, C.J., dissenting.

HANNAH, C.J., dissenting.

I respectfully dissent. The majority holds that Larry Taylor's testimony of two unrelated subsequent robberies offered to explain the nature of his relationship with Smith is admissible under Arkansas Rule of Evidence 404(b) as evidence corroborating Smith's involvement in the shooting of Kamya. I disagree. The purpose of introducing the testimony about the two robberies was to present the jury with evidence that Smith was a criminal.

> No one who has pondered this problem can fail to realize that often when evidence of other offenses is offered, for example to corroborate the testimony of a material witness, relevance for that purpose is being used as a peg upon which to hang the dirty linen of the defendant, so that the jury may determine what sort of man it is upon whose acts they are to render a verdict.

Julius Stone, *Exclusion of Similar Fact Evidence: England,* 46 Harv. L.Rev. 954, 983 (1933). We ought to guard against the admission of "a piece of damning prejudice" on a subsidiary issue. *Id.* This court in *Akins v. State,* 330 Ark. 228, 235, 955 S.W.2d 483 (1997), in discussing Rule 404(b) expressed the concern that compels me to dissent now:

> We have, however, zealously guarded the rights of accused persons to have the State's evidence strictly confined to the issues surrounding the offense charged to ensure that no one is convicted because he has committed offenses other than that for which he is on trial or because he is of bad character and addicted to crime.

That is not to say that evidence could not be relevant to prove the charged crime even though it also coincidentally reveals another unrelated crime. *See Banks v. State,* 2009 Ark. 483, at 11, 347 S.W.3d 31, 38 (Hannah, C.J., concurring). In such a case, an analysis under Arkansas Rule of Evidence 403 is carried out to determine whether the evidence, though relevant, still must be excluded based on prejudicial harm. *Id.* at 13, 347 S.W.3d at 38. In the present case, the testimony at issue casts no direct light whatever on the charged crime. It is ostensibly offered to explain the close criminal relationship between Taylor and Smith so that the jury could infer that Smith was telling the truth to Taylor when he confessed. First, relevance was minuscule. Second, prejudicial harm grossly outweighs any slight probative value. I disagree with the majority's conclusion that Smith failed to sufficiently develop the issue of prejudicial harm. He raised it below and argued it on appeal.

Rule 404(b), and its common-law predecessors, once excluded the evidence that the Rule now largely admits. That alone ought to give us cause to pause and consider the legal principles that underlie the Rule. We ought to carefully consider the effect of such evidence on the presumption of innocence. "The presumed effect of such evidence is to predispose the minds of the jurors to believe the accused guilty and

thus effectively to strip him of the presumption of innocence." *Commonwealth v. Aguado,* 760 A.2d 1181 (Pa.Super.Ct.2000) (quoting *Commonwealth v. Spruill,* 480 Pa. 601, 391 A.2d 1048, 1049–50 (1978)). The United States Supreme Court has stated that although "the particular phrase 'presumption of innocence'—or any form of words—may not be constitutionally mandated, the Due Process Clause of the Fourteenth Amendment must be held to safeguard 'against dilution of the principle that guilt is to be established by probative evidence and beyond a reasonable doubt.'" *Taylor v.* ⌐*Kentucky,* 436 U.S. 478, 485–86, 98 S.Ct. 1930, 56 L.Ed.2d 468 (1978) (quoting *Estelle v. Williams,* 425 U.S. 501, 503, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976)). "[A] finding of guilty should rest upon proof, beyond a reasonable doubt, that the accused committed the exact offense for which he is being tried." *Leaks v. State,* 339 Ark. 348, 358, 5 S.W.3d 448, 454 (1999) (quoting *Simmons v. State,* 233 Ark. 616, 619, 346 S.W.2d 197, 199 (1961)). Smith was effectually stripped of the presumption of innocence. I would reverse and remand this case for a new trial.